EWING et al. v. LITZMANN et al.  (No. 7232.)*

(Court of Civil Appeals of Texas.  Galveston.
June 29, 1916.  On Motion for Rehearing, Oct. 17, 1916.)

1. MASTER AND SERVANT ⟨⟩316(2) — INDEPENDENT CONTRACTORS—LIABILITY OF PRINCIPAL FOR NEGLIGENCE.

Where none of the provisions of a contract for the erection of a building gave the owner or his architects any right to control the contractor as to the methods of work, the power of direction given the architects relating only to the character of material and workmanship used, the contractors were "independent contractors," and the owner was not liable for injuries caused by their negligence.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1243; Dec. Dig. ⟨⟩ 316(2).]

2. MASTER AND SERVANT ⟨⟩319 — INDEPENDENT CONTRACTORS—LIABILITY OF PRINCIPAL FOR NEGLIGENCE — UNLAWFUL ACT — INCIDENT TO WORK.

Where independent contractors for the erection of a building built a fence in the street to keep persons off the premises, their contract with the owner not requiring its construction, which was not necessarily incident to the construction of the building, the erection not being under agreement with or by authority of the owner, such owner was not liable for personal injuries caused by falling of the fence, on the ground that its building and maintenance was an incident to the work, and not authorized by law.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1259–1260; Dec. Dig. ⟨⟩319.]

Appeal from District Court, Harris County; Wm. Masterson, Judge.

Suit by Paul Litzmann against the Brooks-Gordon Construction Company, a partnership composed of Charles W. Brooks and Phil M. Gordon, George H. Hermann, and the City of Houston, wherein, upon Hermann's death, T. J. Ewing, Jr., and others, his executors, were made parties defendant, they bringing a cross-action against the Construction Company, and the members of the firm, and against R. E. Brooks and Mrs. Estelle B. Sharp, as sureties upon the Company's bond. Suit was dismissed as to the City of Houston, and from a judgment for plaintiff against the Construction Company, and the members of the firm, and against defendant executors, with judgment in favor of the executors against their codefendants, and for R. E. Brooks and Mrs. Sharp that the defendant executors take nothing against them, the executors appeal. Judgment reversed, and judgment rendered that plaintiff take nothing as against defendant executors.

J. W. Lockett, of Houston, for appellants.
Woods & King, of Houston, for appellees.

PLEASANTS, C. J.  This suit was brought by appellee Paul Litzmann against the Brooks-Gordon Construction Company, a partnership composed of Charles W. Brooks and Phil M. Gordon, and George H. Hermann and the city of Houston, to recover damages for personal injuries alleged to have been caused by the negligence of the defendants.  The petition alleges, in substance, that plaintiff was injured by the fall of a fence which the Brooks-Gordon Company, who were engaged in erecting a building for the defendant Hermann, had constructed in a public street of the city of Houston.  The acts of negligence charged in the petition are set out in appellants' brief as follows:

"That Hermann and Brooks-Gordon Construction Company caused, authorized and permitted the fence to be constructed and maintained upon the street in violation of law, knowing that it was dangerous.

"That Brooks-Gordon Construction Company and Hermann constructed, maintained, authorized, and permitted the construction of the fence upon the street in an unsafe condition, and in such a manner as it was liable to fall, because it was constructed on an asphalt pavement, a hard substance, when there was no way by which the posts or support could be placed in the ground to render the same secure against falling, or being blown over, and that they knew that said fence so constructed was insecure and liable to fall or be blown over, and knew before it was constructed that it was dangerous to undertake to construct and maintain a fence of that height and character upon said paved highway.

"That said Hermann, when he authorized and permitted said fence to be constructed upon said paved street, knew that the same would be constructed on the asphalt pavement without being placed in or connected with the ground by posts which were necessary to securely and safely hold and maintain said fence and prevent from falling or being blown over, and he knew it was dangerous or liable to fall or be blown over, and that said Hermann and Brooks-Gordon Construction Company and the officers of the city knew, or by ordinary care would have known, that said fence, if constructed as authorized, would have obstructed and interfered with travel upon the street and the use of the same, and that injuries would likely result.

"That Hermann and Brooks-Gordon Construction Company and the officers of the city were negligent in that they constructed, permitted, and authorized said fence to be constructed and maintained upon said street in a negligent, careless, unsafe and dangerous manner, in that the fence was negligently constructed without sufficient supports, and that said Hermann and the Brooks-Gordon Construction Company caused, authorized and permitted the fence to be maintained upon said street in a dangerous and unsafe manner, in that they caused and permitted large quantities of sand, cement, and other materials of like nature to be piled against the said fence in such a manner as to render the same likely to fall, and that the injuries to plaintiff resulted from such negligence."

Pending the trial in the court below the defendant Hermann died, and T. J. Ewing, Jr., J. J. Settegast, Jr., and John S. Stewart, independent executors of the will of the deceased, were made parties defendant.

The executors of Hermann answered by a general demurrer and special exceptions, which were overruled, and by general denial and pleas of contributory negligence on the part of the plaintiff but for which he would not have been injured, and alleged that the Brooks-Gordon Construction Company were independent contractors, with whom Hermann made a contract on December 10, 1908, to furnish the labor and materials for and to

---

construct a building on lots 9 and 10 in block 41, according to plans and specifications agreed upon, and that he had no control over the details, or otherwise, except to secure the results contracted for as to materials and workmanship, but that the contractors agreed to obtain the building permit and to comply with all building and municipal regulations and supervisions, and that it was contracted that the property should be in the exclusive control of the contractors until the building was completed and accepted, and that said Hermann should not have any control over the employés of the contractors, and that the contractors would fully protect Hermann against any liability for damages, and that, if the plaintiff was injured, his injuries occurred before the building was completed and accepted, and that said contractors were independent of Hermann as to when, where, and in what manner they should store and deposit their materials, and as to whether they should use any portion of either street, and the manner of using same, and as to whether or not they should construct any fence or wall on either street, and the manner of constructing or maintaining the same, and that said Herman' did not contract with them to construct the fence nor as to how nor where they should store their materials, that said Hermann did not construct the fence, nor deposit materials against it, nor authorize or permit the same, and did not have any control or supervision over the same, and it was done without any suggestion, permission, or interference from him, and that the city ordinance gave the contractors the right to use one-third of the width of Preston avenue, and that they made a lawful use thereof, and specially pleaded article 690 of the Revised Code of Ordinances of the City of Houston, which is set out in full in the answer, and prohibits certain street obstructions, and has added thereto a proviso "that this article shall not be so construed as to interfere with the construction of buildings and improvements, in which event one-third of the width of the street may be used for material, etc., by the contractor," and further pleaded that, if there were negligent or wrongful acts or dangers, same were not the acts of or caused by said Hermann, and could not have been prevented by him, and he in no wise caused or permitted the same, and is not responsible for the negligent acts, if any, of the contractors.

The answer also contained a cross-action against the Brooks-Gordon Construction Company and Charles W. Brooks and Phil M. Gordon, composing the firm, and also against R. E. Brooks and Mrs. Estelle B. Sharp, as sureties upon the contractors' bond.

The defendants in the cross-action, Brooks and Sharp, answered by general and special exceptions, general denial, and special pleas, the nature of which it is unnecessary to set out.

A general demurrer presented by the city of Houston to plaintiff's petition was sustained by the court, and the suit was dismissed as to said defendant.

The trial then proceeded upon the issues joined by the other parties. Special issues between plaintiff and defendants were submitted to a jury, and upon return of the verdict judgment was rendered in favor of plaintiff against the Brooks-Gordon Construction Company and its individual members and against the defendant executors for the sum of $8,250, with judgment over in favor of the executors against their said codefendants. Judgment was also rendered in favor of R. E. Brooks and Mrs. Sharp that the defendant executors take nothing against them. This appeal is prosecuted only by the defendant executors.

The special issues submitted to the jury and the findings of the jury thereon were as follows:

"(1) "Was or was not said fence constructed and maintained as an incident to the building being then and there erected for Geo. H. Hermann by Brooks-Gordon Construction Company for the purpose of protecting said building and the material then and there being used in the construction thereof?" To this issue the jury answered: "Yes."

(2) "Did or did not Geo. H. Hermann, or his agent, F. S. Glover, know, or should they, or either of them, have known, through the exercise of ordinary care, as the term 'ordinary care' has been herein defined to you, of the condition and purpose of the fence and material shown by the evidence to have been piled against the same?" To this issue the jury answered: "Yes."

(3) "Was or was not the fence in question negligently constructed and maintained, as the term 'negligence' has been hereinbefore defined to you?" To this issue the jury answered: "Yes."

(4) "Was it or was it not negligence, as negligence has been hereinbefore defined to you, to pile sand and material against said fence in the quantity shown by the evidence to have been piled against same, considering the strength and construction of said fence?" To this issue the jury answered: "Yes."

(5) "Would or would not a person of ordinary prudence, or in the exercise of ordinary care for his own safety, as the term 'ordinary care' has been herein defined to you, have walked behind the fence in question, as did the plaintiff?" To this issue the jury answered: "Yes."

The amount of damages sustained by plaintiff was found to be $8,250.

[1] Appellants' first assignment of error complains of the refusal of the court to instruct the jury to return a verdict in their favor.

This assignment must be sustained because the evidence conclusively shows that the defendants Brooks-Gordon Construction Company were independent contractors, and the deceased, George H. Hermann, was in no way responsible for the negligent construction of the fence by the fall of which appellee was injured, nor for the negligent placing of materials by which the fall of the fence was precipitated. The contract between Hermann and the construction company was for the erection by said company of a three-story

brick and concrete building upon lots 9 and 10 in block 41 in the city of Houston. By the terms of the contract the construction company undertook and agreed to furnish all the material and labor and to construct said building, in accordance with plans and specifications attached to said contract, for the sum of $50,700, to be paid the company by Hermann. The contract is lengthy, and it is unnecessary to set it out in full. The following are the provisions of the contract which appellee contends show that the construction company was not an independent contractor, but the servant or agent of Hermann in the construction of the building:

"(a) The contractors, under the direction and to the satisfaction of F. S. Glover & Son and S. A. Oliver, architects, acting for the purpose of this contract as agents of said owner, shall and will furnish and provide all the materials and do and perform all the work mentioned in the specifications.

"(b) The contractors shall, within 24 hours after receiving written notice from the architects to that effect, proceed to remove from the ground or building all the materials condemned by the architects, whether worked or unworked, and to take down and discontinue all portions of the work which the architects shall condemn as unsound or improper, or not done in a workmanlike manner.

"(c) The architects shall be the exclusive judges of whether materials and work are sound and proper and according to the contract, and their decisions in these respects shall be binding on both parties.

"(d) Should the contractors at any time refuse or neglect, or fail to supply a sufficiency of properly skilled workmen, or proper materials, or fail in any respect to prosecute the work with promptness and diligence, or fail in the performance of any of the agreements herein contained, or fail to follow the instructions of the architects in any matter, on which the architects have the right to instruct, such refusal, neglect, or failure shall, by the architects, be called to the attention of the contractors or either of them, by written notice, and if the contractors for a period of three days fail to comply with such written notice, and still so refuse, neglect, or fail to comply with such written notice, then the architects shall certify such failure to the owner, and he shall be at liberty at once, or at any time thereafter, to provide any such labor or materials, and to proceed with the completion of the building.

"(e) The owner agrees to provide all labor and materials not included in this contract, if any, in such manner as not to delay the material progress of the work, and in the event of failure so to do, which causes loss to the contractors, and which cannot be obviated by the contractors, the owner agrees that he will reimburse the contractors for such loss.

"(f) It is agreed and understood that the plumbing and electric wiring and elevators and installation of elevators, as provided for by the general plans and specifications, are not included in this contract; and are wholly excepted from same.

"(g) It is further agreed that the contractors shall, at their expense and to the satisfaction of the architects, make a test of each of the three floors of said building in two rooms of each floor, which rooms are to be selected by the owner, and he may select any two rooms he desires on each floor, and the two rooms of each of the first and second floors shall be subjected to a test of 750 pounds to the square foot of floor space in each room, and the rooms of the third floor shall be subjected to the test of 600 pounds.

"(h) The contractors agree to give the owner the privilege of furnishing for use in the construction of said building such lumber as said owner at the time has on hand, to be paid for at the same price as the contractors would have to pay other persons for the same character of lumber, or for lumber to be put to the same use.

"(i) The contractors have estimated the cost of face brick to be used at $24 per thousand, and it is agreed that, if the owner desires to do so, he may select face brick which cost either more or less than $24 per thousand, and if they cost less, the difference between what they cost and $24 per thousand will be deducted from the contract price, and if they cost more than $24 per thousand, the excess shall be added to the contract price, or the owner shall have the privilege of furnishing such of the face brick to be used in said building as he desires, and shall be allowed therefor the sum of $24 per thousand, regardless of what the face brick may cost him."

The fence in question, which is nowhere mentioned in the contract, was erected by the contractors on Preston street, a public street of the city of Houston, upon which the lots on which the building was being erected fronted. There is an ordinance of the city of Houston which permits building contractors to use one-third of the streets on which the lots upon which they are engaged in building front for storing their material. The fence was erected by the contractors to prevent persons from going upon the grounds upon which the building was being erected and the material stored. The erection of the fence was not necessary for the construction of the building, but contractors usually placed a fence around building material placed in the streets. Hermann was frequently at the building during the course of its construction, and his supervising architects must have known that the fence was there, but there is no evidence that either knew that it was not properly constructed. We think it clear that the evidence is not sufficient to raise the issue of liability on the part of Hermann for the negligence of the contractors.

The test by which to determine whether one who renders service for another is an independent contractor or an agent or servant depends upon the control and direction which the person for whom the service is rendered has over the work, if such control is limited to the result, and does not extend to the details or the means by which the result is to be accomplished, the relation of master and servant does not exist.

None of the provisions of the contract above set out gave Herman or his architects any right to control or direct the contractors as to the method or means by which the work was to be accomplished. The power of direction and control given the architects related only to the character of material and workmanship used in the erection of the building, and in no manner authorized any interference on their part as to the means by which the work was to be accomplished. Under this contract it must be held that the construction company were independent con-

tractors, and appellants' decedent was not liable for injuries caused by their negligence. Cunningham v. Railway Co., 51 Tex. 509, 32 Am. Rep. 632; Smith v. Humphreyville, 47 Tex. Civ. App. 140, 104 S. W. 495.

[2] Appellee ·contends that, regardless of the question of whether the construction company were independent contractors, the evidence shows that the building and maintenance of the fence was an incident in the construction of the building, and, being unauthorized by law, Hermann should be held liable for any injury caused thereby. This contention cannot be sustained. It is true that the fence was erected and maintained by the contractors as an incident of the construction of the building, but their contract with Hermann did not require the building of the fence, and its construction was not necessarily incident to the construction of the building. Hermann could not have required them to erect the fence, and it was not erected under agreement with him, nor was its erection authorized by him, and he was no more responsible for the negligence of the contractors in its erection than he would have been for their negligence in any other matter incident to the construction of the building which was not under his control or direction.

The principle upon which the decision in the Case of Kampmann v. Rothwell, 101 Tex. 535, 109 S. W. 1089, 17 L. R. A. (N. S.) 758, is based is not applicable to the facts of this case. In that case the owner of the property contracted for the construction of a sidewalk, and the work necessarily constituted an obstruction or defect in the sidewalk, which rendered it dangerous as a passageway unless properly guarded, and on these facts it was held that the owner could not defeat liability on the ground that the work was performed by an independent contractor. The owner having contracted for and authorized the construction of the sidewalk, and the work which he had so contracted for being necessarily dangerous to the public unless properly guarded, he was held responsible for the failure of the contractor to have it so guarded. It is, we think, clear that upon the facts of this case no liability can be imposed upon the Hermann estate for the injury sustained by appellee. This conclusion requires that the judgment against appellants be reversed, and judgment here rendered in their favor. This holding upon the question of appellants' liability to appellee eliminates the question of the liability of the sureties upon the contractors' bond for the amount appellants might have been required to pay plaintiff on account of the negligence of the contractors. We are, however, of opinion that the trial court correctly held that the sureties on said bond could not be held liable to appellants for such amount. It is ordered that the judgment of the

court below against appellants be reversed, and judgment here rendered that plaintiff take nothing as against the defendant executors.

Reversed and rendered.

## On Motion for Rehearing.

Counsel for appellee Litzman in their motion for rehearing very earnestly insist that our opinion heretofore filed in this case is in conflict with the opinion of the Court of Appeals for the Fourth District in the case of Moore & Savage v. Kopplin, 135 S. W. 1033.

The learning and ability of the great judge who wrote that opinion would make us long hesitate to express a different opinion of the law applicable to facts identical with those in that case. But the facts in the two cases are different. In the case cited the construction of the fence in the street was shown to be unlawful, and its maintenance there· created a public nuisance, and there was evidence, as stated in the opinion of the court on motion for rehearing, showing that the contractor placed the fence in the street in· obedience to the orders and directions of the owner of the building. The holding in· that case is based upon the theory that the· owner contracted for and directed the placing of an unlawful and dangerous obstruction in the street, and upon such facts the court correctly held he could not relieve himself from liability for injury caused by such obstruction on the plea that it was placed in the street by an independent contractor.

As stated in our main opinion, the facts in the instant case show that the owner, Hermann, did not contract for or direct the construction of the fence, and there is no evidence that the placing of the fence in the street by the contractor was unauthorized, and that its maintenance there for the purposes and under the conditions in which it was maintained created a public nuisance. The ordinance under which the fence was placed in the street granted the right to use the street to the contractor. The permit to erect the building was issued in the name of the owner of the property, but the undisputed evidence shows that it was not applied for by Hermann, and it was presumably obtained by the contractor as the contract required him to obtain it. We think it immaterial, however, who obtained the permit for the construction of the building, since the undisputed evidence shows that the erection of the fence was not included in the contract, and was not necessary in the construction of the building.

Such being the facts, we do not think that upon any principle of law or demand of justice Hermann should be held liable for the negligent manner in which the fence was· constructed, nor for the negligence of the contractor in placing his material against.

the fence, and thus causing it to fall and injure the appellee.

We think the motion for rehearing should be overruled; and it is so ordered.