## EVANS v. BRYANT et al.
### No. 699.

Court of Civil Appeals of Texas. Eastland.
June 6, 1930.

Rehearing Denied June 27, 1930.

Barker & Orn, of Cisco, and J. R. Stubblefield, of Eastland, for appellant.

Cantey, Hanger & McMahon, of Fort Worth, Conner & McRae, of Eastland, and Gillis Johnson, Warren Scarborough, and E. A. McCord, all of Fort Worth, for appellees.

FUNDERBURK, J.

Tom Bryant and the Canyon Oil & Gas Company, Inc., contracted with D. F. Mellette, who was engaged in the business of trucking or teaming contractor, to move certain steel tanks from Cisco to Cross Plains and there to set the same up upon premises of the said Bryant. The contract was for a "turnkey job" for which Mellette was to be paid the sum of $225. Mellette in turn contracted with Jack Tindall for the latter to furnish the teams, labor, and most of the equipment to do the work. Mellette furnished a truck, and both Mellette and Tindall supervised the work of moving one of the tanks, which was about 15 feet in diameter, and 30 feet in length, weighing approximately 30,000 pounds. This particular tank, being the only one with which we are concerned, will be referred to as the tank. The contract did not provide that the tank should be moved over any highway nor by railroad, but before the work was begun Tom Bryant had notice that the contractor would possibly or probably move it over the paved highway between Cisco and Rising Star. The tank, while in fact being moved over said highway, was, on the evening of November 26, 1928, parked for the night partially upon the paved road at a place where the pavement was about 16 feet wide. The eastern margin of the tank extended over upon the pavement about 8½ feet. To the east the portion of the pavement not covered by the tank, together with the unpaved part of the road, was about wide enough for two cars to pass. After night a small Ford truck was driven by one Steinbaugh up 4 or 5 feet behind the truck and there left standing with both front and rear lights burning. About 9 o'clock a truck driven by Bow Speights, in which Otis F. Evans and Wayne Malone also were riding, while proceeding from Cisco to Rising Star, struck the rear end of the Ford truck, ran off the road to the west of

the tank, and turning east, collided head-on against the tank about the middle of same. Speights, the driver, was killed, and Evans suffered serious and permanent injuries.

This suit is by Otis F. Evans against Tom Bryant, the Canyon Oil & Gas Company, Inc., D. F. Mellette, and Jack Tindall to recover damages for injuries sustained by him. A number of different grounds of negligence were alleged. The allegations as to one such ground of negligence upon which the controlling questions upon this appeal arise were as follows:

"It was the legal duty of the defendants and each of them to completely move the tank off the highway, and had the defendants and each of them used ordinary care or acted as an ordinarily prudent person would have acted under the same or similar circumstances, they would not have stopped said tank on the highway as herein alleged, and permitted the same to remain there at night, but they would have pulled the tank completely off the highway into some lane or in some way cleared the highway of it. There was ample room at and around the place where the tank was located for the defendants and each of them to have moved the tank off the highway. The defendants, the Canyon Oil & Gas Company, Inc., Delle F. Mellette, and Jack Tindall, (by alternative allegation the same was alleged of Tom Bryant) were negligent and grossly negligent in that they failed to move said tank off the highway before parking the same for the night, and the defendants, the Canyon Oil & Gas Company, Inc., (this also applies to Tom Bryant) was further guilty of negligence and gross negligence in that it did not have and see that the other defendants did move the tank off the highway before parking the same for the night."

Mellette and Tindall were alleged to be servants, agents, and employees of Tom Bryant and the Canyon Oil & Gas Company. Tom Bryant and the Canyon Oil & Gas Company, among other defenses, asserted that Mellette was an independent contractor; that Mellette employed Tindall; and that neither Mellette nor Tindall were servants, agents, or employees of said defendants. The trial court peremptorily instructed the jury to return a verdict for all the defendants, and from the judgment thereon plaintiff has appealed.

Appellant challenges upon two grounds the correctness of the action of the trial court in giving the peremptory instruction. One is that the evidence raised an issue of fact for the jury as to whether Mellette and Tindall were independent contractors rather than servants, agents, or employees of the other defendants. The other is that, even if Mellette and Tindall were independent contractors, under the allegations of appellant's pleading and the evidence, issues were tendered as to the liability of Tom Bryant and the Canyon Oil & Gas Company, Inc., upon the grounds of an exception to the general rule of nonliability. We will give consideration to these two contentions in the order mentioned.

The evidence which appellant insists raised the issue that Mellette and Tindall were servants, agents, or employees of the other defendants were the facts that the tank belonged to the other defendants and was being moved by Mellette and Tindall for them. These facts, unexplained, it may be admitted, are sufficient to create a presumption that they were employees under the rule stated in C. J., as follows: "There is a presumption that one performing work and labor for another is an employee of such other, and the burden is upon the latter, who seeks to be relieved from the liability arising from such relation to show the intervention of an independent contractor." 39 C. J. p. 52.

■■ Without desiring to be understood as here either approving or questioning the correctness of that statement of the law, we will assume that it is correct. If correct, then the action of the trial court in giving the peremptory instruction must be tested by a determination of whether or not the uncontroverted evidence was such, as a matter of law, to destroy the presumption. In passing upon this question it is necessary as a preliminary matter to notice whether or not the evidence that Mellette and Tindall were independent contractors was the evidence of interested or disinterested parties. It is insisted that the evidence showing or tending to show that the relation was that of independent contractors consists of the testimony of interested parties, and that therefore, even if such evidence be uncontroverted, there is involved the credibility of the witnesses or weight to be given the evidence, so as to present an issue for the jury. We find it unnecessary to determine this question. Although Mellette and Tindall were defendants, they were not, we think, with respect to the liability of Tom Bryant and the Canyon Oil & Gas Company, Inc., to be regarded as interested in the same sense. We cannot see that it would in any wise be to the interest or advantage of said parties to have the others declared not to be independent contractors. The testimony of Mellette offered by plaintiff, and therefore its credibility vouched for, is uncontroverted that he was engaged in the business of a teaming or trucking contractor. The evidence of Jack Tindall and other disinterested parties was uncontroverted to the effect that Jack Tindall was engaged in such business of contractor. E. M. Corah, a disinterested witness of plaintiff, from whom the tank was purchased, testified that he was present when the contract

was made between Bryant and Mellette, and that Bryant agreed to pay $225 for the work. Specifically he testified: "Mr. Bryant told him (Mellette) he would give him $225.00 to take the agitator and set it up at Cross Plains just as it looked sitting up out there."

Mellette testified: "The terms of the agreement I had with Tom Bryant was a turn-key job for $225.00 to haul the tank from Cisco to Cross Plains and put it back."

And again: "The terms of my contract with him was to move the tanks to Cross Plains and place them back just like they were in Cisco. There was nothing said about how I was to move them. * * * Mr. Bryant had nothing to do with who I hired or who I fired or how I moved the tank. That is what nobody had to do with me. I always did it like I wanted to."

Joe Hillyer testified: "I made this deal or contract with Mr. Mellette as Mr. Tindall's foreman to move this tank over to Cross Plains; the tank was moved with our teams and with our crew. I was working for Jack Tindall in moving this tank. He was paying me by the day. I was using his teams."

▆▆▆ The uncontroverted evidence that Mellette and Tindall were engaged in the business of contractors has a very important bearing. "Although, in a general sense, every person who enters into a contract may be called a contractor, yet the word, for want of a better one, has come to be used with special reference to a person who, in the pursuit of an independent business, undertakes to do a specific piece or job of work for other persons, using his own means and methods without submitting himself to control as to the petty details. The true test of a 'contractor' would seem to be that he renders the service in the course of an independent occupation, representing the will of his employer only as to the result of his work and not as to the means by which it is accomplished." 13 C. J. 211; Cunningham v. International Ry. Co., 51 Tex. 503, 32 Am. Rep. 632; S. W. Tel. & Tel. Co. v. Paris, 39 Tex. Civ. App. 424, 87 S. W. 724. There was no evidence whatever that Mellette and Tindall, in the moving of the tank, were not pursuing their business as "contractors" within the meaning of that term, as above defined. The testimony that it was to be a turnkey job itself shows that they were not doing the work as ordinary employees. We are therefore of opinion that the uncontroverted evidence completely rebutted any presumption that might otherwise obtain that Millette and Tindall were employees, and on the contrary showed that they were independent contractors.

We next come to consider whether or not, granting that Mellette and Tindall were independent contractors, the defendants Bryant and Canyon Oil & Gas Company, Inc., were nevertheless liable. The best statement of the general rule of liability that we have found is from Corpus Juris, as follows: " * * * The general rule deducible from the decisions and the one now universally recognized is that, where the relation of an independent contract exists, and due diligence has been exercised in selecting a competent contractor, and the thing contracted to be done is not in itself a nuisance, nor will necessarily result in a nuisance if proper precautionary measures are used, and an injury to a third person results, not from the fact that the work is done, but from the wrongful or negligent manner of doing it by a contractor or his servants, the contractee is not liable therefor." 39 C. J. 1324. Cited under the text are the following Texas cases: Ewing v. Litzmann (Tex. Civ. App.) 188 S. W. 742; Higrade Lignite Co. v. Courson (Tex. Civ. App.) 219 S. W. 230; North American Dredging Co. v. Pugh (Tex. Civ. App.) 196 S. W. 255; Kampmann v. Rothwell (Tex. Civ. App.) 107 S. W. 120.

An exception to the above general rule of liability, which appellant contends is applicable to this case, is stated by the same authority, as follows: "A very important exception to the general rule exempting the contractee from liability for injuries caused by the negligence of an independent contractor or his servants is that, where the work is dangerous of itself, or as often termed, is 'inherently' dangerous, unless proper precautions are taken, liability cannot be evaded by employing an independent contractor to do it. Stated another way, where injuries to third persons must be expected to arise unless means are adopted by which such consequences may be prevented, the contractee is bound to see to the doing of that which is necessary to prevent the mischief, and cannot relieve himself of his responsibility by employing someone else, whether it is the contractor employed to do the work from which the danger arises, or some independent person to do what is necessary to prevent the act he has ordered to be done from becoming wrongful." 39 C. J. 1332.

▆▆▆ The theory under which it is claimed that the above exception becomes applicable is that, owing to its size, the tank, while being moved down the highway, constituted a nuisance, in that it obstructed a public highway, and that while parked as it was it constituted an obstruction and a nuisance. Had the moving of the tank down the highway by reason of unusual size proximately caused an injury, a question might have been presented as to whether the principle of the exception contended for was applicable. But, as we see it, no such question arises upon this record. The injury did not result from moving the tank along the highway. Plaintiff did not allege that Bryant and the Can-

yon Oil & Gas Company, by their contract, required the other defendants to park the tank at night so as in any manner to obstruct the highway. We cannot say, as a matter of judicial knowledge, that the contract made necessary the parking of the tank so as to obstruct in any manner the highway. That plaintiff entertained no such view, even at the time his amended petition was filed, is shown by his allegations that there was ample room to park the tank off the highway and charging negligence consisting of a breach of duty to park the same off the highway. If any negligence that was charged against any of the defendants proximately caused the injuries complained of, it was that, or else the failure to place proper lights. The parking of the tank upon the highway, and the failure, if any, to place warning lights, if negligence, was the negligence of Mellette and Tindall. Each involved a matter of detail in carrying out their contract not provided for in the contract nor contemplated by the terms of the contract. That fact is determinative of the nonliability of the independent contractors. Ewing v. Litzmann (Tex. Civ. App.) 188 S. W. 742 (writ refused).

· The text of Corpus Juris embodying the exception to the general rule as set out above closes with this modification or limitation: "If the work is of such a nature that it could be done without probable injury to anyone except in the event of negligence in the manner of doing it, no liability attaches to the employer." As supporting the text is cited: Mo. Valley Bridge & Iron Co. v. Ballard, 53 Tex. Civ. App. 110, 116 S. W. 93; Dixon v. Robinson (Tex. Civ. App.) 276 S. W. 770; Stephenville, etc., Ry. Co. v. Couch, 56 Tex. Civ. App. 336, 121 S. W. 189.

Judge Gaines quotes from Dillon a good statement of the exception to the general rule now under consideration, as follows: "So far as we have seen, the limitation of the rule has been by no one better expressed than by Judge Dillon. He says: 'The general rule is stated in the preceding section, but it is important to bear in mind that it does not apply where the contract directly requires the performance of a work intrinsically dangerous, however skillfully performed. In such a case the party authorizing the work is justly regarded as the author of the mischief resulting from it, whether he does the work himself or lets it out by contract.' 2 Dillon's Mun. Corp. par. 1029." Mill & Elevator Co. v. Anderson, 98 Tex. 156, 81 S. W. 282, 1 L. R. A. (N. S.) 198.

■ It is quite obvious that we are not dealing with a state of facts coming within the exception as thus stated. There was therefore, in our opinion, no error in the action of the court in instructing a verdict for Bryant, and the Canyon Oil & Gas Company, Inc.

■ As to the other defendants, we think an issue of fact as to their liability was raised, and the peremptory instruction should not have been given in their favor.

But one other proposition requires discussion. While on the witness stand, Tom Bryant was asked the question: "Did you render any assistance to the boys in moving the tank?" The question was objected to unless limited to the time preceding the accident. The question being so limited and answered, he was then asked: "After the accident, did you assist them in moving the tank?" The question was objected to and sustained. The action of the court in this respect is assigned as error. The bill shows that counsel for plaintiff stated to the court that, if permitted to make inquiry of the witness on cross-examination as to any assistance rendered by the witness in moving the tank subsequent to the accident, he would elicit from the witness that the witness met the tank at the edge of the railroad near the edge of the town of Rising Star; that the witness told his brother, John Bryant, that if he was in his place he would go see the mayor of Rising Star and ask him to grant Mr. Mellette permission to take the tank through the town of Rising Star; that counsel would elicit from the witness that he did render assistance to Mellette in getting the tank through Rising Star by talking, and he would further elicit from the witness that, previous to the trial, he had testified by deposition that he did render some service in moving the tank through the town of Rising Star by talking; that he was in town while the tank was being moved for about forty minutes. The bill further shows that the questions and answers in the depositions referred to were as follows:

"Q. Where was the tank at that time? A. It was not far from the site of the accident, in the town of Rising Star. I met the tank at the edge of the railroad near the town of Rising Star.

"Q. Did you attempt to assist them? A. No sir; my brother who used to live at Rising Star went to see the mayor at the request of Mr. Mellette and asked him to grant Mr. Mellette permission to go through the town.

"Q. Your brother did that? A. Yes, sir.

"Q. Did you ask your brother to go to see the mayor? A. I told him I would render them any assistance I could.

"Q. Who did you tell that? A. My brother.

"Q. Did you ask your brother to go see the mayor? A. I do not think so. I think I told my brother that if I was in his place I would go to see the mayor and ask him to grant Mr. Mellette permission to take the tank through town.

"Q. Did you render any assistance to them in getting the tank through Rising Star? A. Not any more than talking.

"Q. You did render some assistance by talking? A. Yes, sir.

"Q. How long were you in Rising Star? A. I don't know. I expect 40 minutes or maybe an hour.

"Q. How long were they taking the tank through the town of Rising Star? A. I don't know.

"Q. Well, they moved the tank through the town while you were there? A. They must have cleared the business section when I left."

Whether or not Bryant actually exercised any direction or control over the moving of the tank is only important as tending to show a right to exercise such direction and control. The question is: Did the excluded testimony tend to show such right. The acts of assistance, the evidence of which was excluded, were not, we think, acts of direction or control. Such acts are entirely consistent with their being simply acts of friendly service. Plaintiff, by the testimony of Corah, a disinterested witness, and by offering the depositions of Mellette, proved that the relation between Bryant and his company on the one hand, and Mellette on the other, was that of independent contractor and contractee. The excluded testimony was just as consistent with the fact of that relationship as with a relationship of master and servant, employer and employee. It was therefore without probative force as relating to the only issue upon which it was offered. There was therefore, we think, no prejudicial error in its exclusion.

It is the opinion of the court that the judgment of the trial court as to Tom Bryant and Canyon Oil & Gas Company, Inc., should be affirmed. But as to the defendants Mellette and Tindall it should be reversed and remanded for a new trial. It is accordingly so ordered.