ERNEST LOYD V. F. D. HERRINGTON.

No. A-135. Decided October 11, 1944.
Rehearing overruled November 22, 1944.
(182 S. W., 2d Series, 1003.)

136

*Todd, Crowley & Gambill,* of Fort Worth, and *Strasburger, Price, Holland, Kelton & Miller,* of Dallas, for petitioner.

The evidence having affirmatively shown that an employee of the subcontractor, in attempting to play a prank on his fellow employee, turned aside from his regular employment and placed a dynamite cap on the motor of the truck operated by the said fellow employee, which cap subsequently exploded when the plaintiff opened the hood to investigate the trouble of a missing cylinder, it was error for the trial court to refuse to enter an instructed verdict for the defendant, a road contractor who had subleased his contract to a subcontractor. It was likewise error for the Court of Civil Appeals to approve the erroneous action of the trial court. Murphy v. City of Rotan, 139 S. W. (2d) 134; Galveston H. & S. A. Ry. Co. v. Currie, 96 S. W. 1073; Pittsburgh, etc., Ry. Co. v. Shields, 47 Ohio St., 387, 24 N. E. 658; Gulf, C. & S. F. Ry. Co. v. Oakes, 94 Texas 155, 58 S. W. 999.

*Chester B. Collins,* of Fort Worth, and *Will R. Saunders,* of Dallas, for respondents.

Since the evidence showed that the work contracted for to be done by Loyd was inherently and intrinsically dangerous, and that the dynamite caps were likewise danger instrumentalities, Loyd, the general contractor could not delegate such work to a subcontractor and thereby avoid liability for plaintiff's in-

juries and damages, and it was not error for the Court of Civil Appeals to approve the action of the trial court in overruling defendant's Loyd's motion for an instructed verdict. El Paso Elec. Co. v. Buck, 143 S. W. (2d) 438; City of Waco v. Hurst, 131 S. W. (2d) 745; L. E. Whitham Const. Co. v. Wilkins, 90 S. W. (2d) 916.

MR. JUDGE FOLLEY, of the Commission of Appeals, delivered the opinion for the Court.

This is an action by the respondent, F. D. Herrington, against petitioner, Ernest Loyd, for damages alleged to have been sustained by the explosion of a dynamite cap· which resulted in the loss of respondent's right eye. He had previously lost the sight of his left eye and the latter injury left him totally blind. Respondent recovered a judgment for $25,531 in the trial court. By majority opinion such judgment was affirmed by the Court of Civil Appeals at Fort Worth, with Chief Justice McDonald dissenting. 178 S. W. (2d) 694.

Petitioner is a general road contractor and at the time of the injury had about fifteen separate contract jobs in the State of Texas, one of which was near Caddo in Stephens county, the· scene of the injury involved herein. The area in which this road was being constructed required blasting of rock and hard dirt with dynamite and dynamite caps. Petitioner sublet this portion of the construction work to J. L. Johnson, an independent contractor. Johnson's foreman was R. M. Keel. R. D. Rowe was one of Johnson's employees working under Keel, the foreman. In the course of the blasting operations upon the highway some of the dynamite caps would fail to explode. Johnson's employees were instructed to recover such explosives and return them to the foreman.

On the date of the injury Rowe picked up one of the unexploded dynamite caps on the work and conceived the idea of playing a prank upon Keel, his foreman, who was driving one of Johnson's trucks upon the job. Between two and three o'clock in the afternoon, while Keel was temporarily absent from the truck, Rowe attached the dynamite cap to the ignition system of the motor in such manner that it was contemplated the cap would explode when the motor was started. Howe saw Keel return to the truck and start the motor, but the explosion did not occur at that time. Keel drove away in the truck without knowledge of the presence of the cap. One cylinder of the motor missed as he drove it about the job the remainder of the afternoon. About 6 p. m. the crew quit and Keel thereupon drove

the truck to respondent's garage at Caddo and requested respondent, who operated an independent business having no connection with the road work, to find the cause of the miss in the motor. Keel still knew nothing about the cap being on the motor. As respondent raised the hood of the truck the cap exploded and the above named injury resulted.

The trial court overruled petitioner's motion for an instructed verdict. Numerous issues of negligence, and kindred issues of proximate cause, as to the acts of Rowe, Keel and others on the job, were submitted to the jury, all of which are resolved in favor of respondent. The jury also found upon issues submitted that petitioner Loyd failed to take proper precautions to avoid the injuries to respondent, that he permitted large numbers of dynamite caps to remain immediately on and adjacent to the road, and failed to keep in a safe place all unexploded dynamite caps used upon the job. Such omissions were further found to constitute negligence and the proximate cause of the injuries. Petitioner filed a motion for judgment non obstante veredicto, which was overruled by the court. This court granted the writ of error upon the assignment that the trial court erred in not granting petitioner's motion for an instructed verdict.

■ The record shows conclusively that Johnson was an independent contractor and that all the employees involved in this injury were exclusively within his jurisdiction. Petitioner had no direct connection with the work involved nor with such employees. Therefore, the findings of the jury and the evidence as to negligence and proximate cause become immaterial except in so far as they affect the nondelegable duty of an employer to see that work of an inherently dangerous character is performed by his independent contractor with due care for the safety of others. A clear statement of the rule of law pertinent to this matter will be found in 27 Am. Jur. 517, Sec. 39, in the following language:

"An employer is liable for injuries caused by the failure of an independent contractor to exercise due care with respect to the performance of work which is inherently or intrinsically dangerous. The theory upon which this liability is based is that a person who engages a contractor to do work of an inherently dangerous character remains subject to an absolute, nondelegable duty to see that it is performed with that degree of care which is approximate to the circumstances, or, in other words, that all reasonable precautions shall be taken during its per-

formance, to the end that third persons may be effectually protected against injury."

A general discussion of the doctrine and authorities regarding the duty and liability of an employer for the injuries caused by independent contractor or his employees engaged in the performance of work which is inherently or intrinsically dangerous, is found in 23 A. L. R. 1085, et seq. Such doctrine has been applied in this State in several instances, among which are the following cases: Kampmann v. Rothwell, 101 Texas 535, 109 S. W. 1089, 17 L. R. A. N. S. 758; Cameron Mill & Elevator Co. v. Anderson, 78 S. W. 8, affirmed 98 Texas 156, 81 S. W. 282, 1 L. R. A. N. S. 198; Missouri Valley Bridge & Iron Co. v. Ballard, 53 Texas Civ. App. 110, 116 S. W. 93, writ denied; Continental Paper Bag Co. v. Bosworth, 276 S. W. 170; Evans v. Bryant, 29 S. W. (2d) 485, writ refused; Ewing v. Litzmann, 188 S. W. 742, writ refused.

In none of the cases we have found on the subject has the employer or contractee been held liable for any injuries except those which result directly from the nature of the inherently dangerous work and which might reasonably have been within the contemplation of the parties. No recovery may be allowed for an injury resulting from an act or fault purely collateral to the work and which arises entirely from the wrongful act of the independent contractor or his employees.

In Missouri Valley Bridge & Iron Co. v. Ballard, supra, in discussing the exception to the general rule that the employer is not liable for the negligence of an independent contractor or his employees, the court said:

"The exception within which the verdict of the jury has brought this case finds its best illustration in those cases where public streets have been made dangerous by excavations or otherwise, and where in the nature of things the safety of the traveling public has been endangered, unless needed precautions have been taken to prevent it. In such a case, as has been often said, the injuries are the direct result of the very thing which the employer authorized to be done, and he cannot, therefore, escape liability by farming out the work to an independent contractor. It is in the nature of a nondelegable duty owing to those whose life or limb is thus jeopardinzed. But where, as here, the injury is a result of an act or fault purely collateral to the work to be done, and is the result entirely of the wrongful act of the independent contractor or his workmen, the employer should not be held liable." (53 Texas Civ. App. 110, 116 S.W. 98.)

In Evàns v. Bryant, supra, recovery was sought against the employer for injuries resulting from the negligent act of Mellette and Tindall, independent contractors, who were engaged to move certain steel tanks and who obstructed a public highway by parking a truck thereon. It was held in that case that the employer was not liable because it was not contemplated by the parties that the truck would be so parked upon the highway and the injuries did not result from the moving of the steel tanks. In discussing the question before the court it was said: .

"The theory under which it is claimed that the above exception becomes applicable is that, owing to its size, the tank, which being moved down the highway, constituted a nuisance, in that it obstructed a public highway, and that while parked as it was it constituted an obstruction and a nuisance. Had the moving of the tank down the highway by reason of unusual size proximately caused an injury, a question might have been presented as to whether the principle of the exception contended for was applicable. But, as we see it, no such question arises upon this record. The injury did not result from moving the tank along the highway. * * * We cannot say, as a matter of judicial knowledge, that the contract made necessary the parking of the tank so as to obstruct in any manner the highway. * * * The parking of the tank upon the highway, and the failure, if any, to place warning lights, if negligence, was the negligence of Mellette and Tindall. Each involved a matter of detail in carrying out their contract not provided for in the contract nor contemplated by the terms of the contract." (29 S. W. (2d) 487).

In Ewing v. Litzmann, supra, the employer, George H. Hermann, contracted with an independent contractor to erect a building in the City of Houston. The independent contractor built a fence in the street to keep persons off the premises. The contract did not require its construction nor was it necessarily incident to the erection of the building. It was held that the owner or employer was not liable for personal injuries caused by the falling of the fence. In disposing of the issue thus made in that case, the court said:

"Appellee contends that, regardless of the question of whether the construction company were independent contractors, the evidence shows that the building and maintenance of the fence was an incident in the construction of the building, and, being unauthorized by law, Hermann should be held liable for any injury caused thereby. This contention cannot be sustained. It is true that the fence was erected and maintained by the con-

tractors as an incident of the construction of the building, but their contract with Hermann did not require the building of the fence, and its construction was not necessarily incident to the construction of the building. Hermann could not have required them to erect the fence, and it was not erected under agreement with him, nor was its erection authorized by him, and he was no more responsible for the negligence of the contractors in its erection then he would have been for their negligence in any other matter incident to the construction of the building which was not under his control or direction." (188 S. W. (2d) 745).

Each of the above cases from which we quote has had the express approval of this court, and we think the rule stated in them is decisive of the question before us. The injury to respondent was not "the direct result of the very thing which the employer authorized to be done," that is, the blasting of the rock and the building of the road. It was the result of a prank played by the workmen which was clearly a collateral matter not in contemplation of the employer and the independent contractor and not arising in the course of the work engaged upon. The mere fact that the dynamite cap involved herein was picked up on the job by the employee does not change the rule above expressed. The origin of the cap is not important. The same injury, no doubt, would have resulted had the employee acquired it from some other source. Nor does the failure of the employees to recover the explosive from the motor prior to the injury alter the situation. Such omission was but a continuation of the original prank, and the whole event was clearly foreign to the building of the road and not necessarily incident thereto. In determining the liability of this petitioner the only important inquiry is whether the injury resulted from the nature of the inherently dangerous work and whether it should reasonably have been anticipated by the parties. We think the facts of the case fail to meet this qualification. The authorities seem to be uniform that this test must be satisfied before liability attaches to the employer for injuries resulting from the default of an independent contractor or his employees.

We think the trial court erred in not granting petitioner's motion for an instructed verdict and that the Court of Civil Appeals erred in not sustaining his assignment in this respect.

The judgments of both courts below are reversed and judgment is here rendered for petitioner.

Opinion adopted by the Supreme Court October 11, 1944.
Rehearing overruled November 22, 1944.