NO. 07-08-0133-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

MAY 29, 2009

_____

KENNETH HUFFAKER, APPELLANT

V.

WYLIE LP GAS, INC., INDIVIDUALLY, AND AS GENERAL PARTNER
OF T&B, LTD., A TEXAS LIMITED PARTNERSHIP, AND
T&B, LTD., A TEXAS LIMITED PARTNERSHIP, APPELLEES

_____

FROM THE 72ND DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2006-534,840; HONORABLE RUBEN REYES, JUDGE

_____

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

**MEMORANDUM OPINION**

Appellant, Kenneth Huffaker, appeals the granting of a no-evidence summary judgment in favor of appellees, Wylie LP Gas, Inc. (individually, Wylie LP Gas), individually and as General Partner of T&B, Ltd., and T&B, Ltd. (collectively, Wylie).  We affirm the trial court's judgment.

Factual and Procedural Background

On or about February 27, 2006, an explosion and fire occurred at Wylie LP Gas's propane gas business property that spread to adjacent property owned by Huffaker. The fire damaged and destroyed real and personal property of Huffaker. Huffaker filed suit against Wylie to recover damages resulting from this fire.[1]

On January 10 and 11, 2008, Wylie filed a no-evidence motion for summary judgment and a supplemental no-evidence motion for summary judgment in which Wylie challenged, *inter alia*, whether Huffaker could produce evidence (1) that T&B, Ltd., or Wylie LP Gas, as General Partner of T&B, Ltd., is a proper party to the suit; (2) of any of the elements necessary to state claims for gross negligence, negligence per se, or *res ipsa loquitur;* (3) of a breach of duty or that any breach of duty proximately caused Huffaker's damages in regard to the storage, maintenance, inspection, filling, or handling of propane tanks; (4) Wylie's implementation or monitoring of safety procedures was a breach of duty or that any breach of duty proximately caused Huffaker's damages; (5) Wylie had knowledge of any person smoking in close proximity to the propane tanks or that such smoking caused the explosion and fire; or (6) that Huffaker suffered compensable mental or emotional anguish damages proximately caused by the explosion and fire.[2] In response,

---

[1] Other parties were involved in this lawsuit as plaintiffs, however, these other claims have been settled and severed from the judgment before us.

[2] A review of Huffaker's live pleading, filed after Wylie's no-evidence motions on February 7, 2008, reveals that Huffaker abandoned his claims of gross negligence, negligence per se, and *res ipsa loquitur*. As such, we will not address these claims as they were no longer before the trial court when the trial court granted Wylie's motions.

Huffaker filed summary judgment evidence consisting of deposition transcripts of former Wylie employee David Rebber, current Wylie manager Ronald Bridges, and Wylie President William Tipton. In addition, Huffaker provided transcripts of recorded statements taken from Rebber and Bridges. Wylie objected to this evidence because it was unverified and, therefore, constituted inadmissible hearsay. No ruling on Wylie's objections are contained within the record.

On February 25, 2008, the trial court granted Wylie's no-evidence motions for summary judgment. It is from this ruling that Huffaker now appeals.

By one issue, Huffaker contends that the trial court erred in granting Wylie's no-evidence motions for summary judgment because Wylie did not preserve objections to Huffaker's summary judgment evidence and because that evidence constitutes more than a scintilla of evidence to support Huffaker's claim that Wylie was negligent. We affirm the trial court's judgment.

Wylie's Objections to Huffaker's Evidence

In response to Huffaker's presentation of summary judgment evidence, Wylie filed objections to each of Huffaker's six exhibits on the basis that the exhibits are unverified and, therefore, constitute inadmissible hearsay. The trial court granted Wylie's motions for no-evidence summary judgment without ruling on Wylie's objections to Huffaker's summary judgment evidence. On appeal, Huffaker contends that Wylie failed to preserve these objections due to its failure to obtain a trial court ruling on them.

3

Deposition transcripts and excerpts are not required to be authenticated when submitted as summary judgment evidence. McConathy v. McConathy, 869 S.W.2d 341, 341 (Tex.1994) (per curiam); McClure v. Attebury, 20 S.W.3d 722, 731 (Tex.App.–Amarillo 1999, no pet.). Thus, the issue of whether Wylie's objections were preserved relates solely to the recorded statements of Bridges and Rebber. Generally, documents submitted as summary judgment evidence must be sworn to or certified. Llopa, Inc. v. Nagel, 956 S.W.2d 82, 87 (Tex.App.–San Antonio 1997, writ denied). Unauthenticated or unsworn documents or documents not supported by affidavit are not entitled to consideration as summary judgment evidence. Id. While defects in affidavits or attachments in response to motions for summary judgment are generally waived unless properly preserved at trial, a complete absence of authentication is a defect of substance that may be urged for the first time on appeal. Blanche v. First Nationwide Mortgage Corp., 74 S.W.3d 444, 451 (Tex.App.–Dallas 2002, no pet.). Our review of the recorded statements reveals that none of the three are certified, sworn, or supported by affidavit. Consequently, we conclude that Wylie's objection was an objection to a defect of substance that was not waived by Wylie's failure to obtain a ruling of the trial court. Id. Further, because there is a complete absence of authentication of this evidence, neither the trial court nor this Court may consider these statements as evidence in response to Wylie's motions for summary judgment. Llopa, Inc., 956 S.W.2d at 87.

Huffaker's Negligence Claims

We now turn to the central issue in this appeal, which is whether the deposition testimony of former Wylie LP Gas employee David Rebber, current Wylie LP Gas manager

4

Ronald Bridges, and Wylie LP Gas President William Tipton was more than a scintilla of evidence to raise a genuine issue of material fact as to the elements of Huffaker's negligence claims challenged by Wylie's motions for summary judgment.

Standard of Review

Because a no-evidence motion for summary judgment is, in essence, the same as a pretrial directed verdict, we apply the same legal sufficiency standard. See Kelly v. Demoss Owners Ass'n, 71 S.W.3d 419, 423 (Tex.App.–Amarillo 2002, no pet.). A no-evidence motion for summary judgment is properly granted unless the non-movant brings forth more than a scintilla of evidence to raise a genuine issue of material fact on the elements challenged by the motion. See TEX. R. CIV. P. 166a(i); Ford Motor Co. v. Ridgway, 135 S.W.3d 598, 600 (Tex. 2004). More than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." Burroughs Wellcome Co. v. Crye, 907 S.W.2d 497, 499 (Tex. 1995). On the other hand, less than a scintilla of evidence has been described as evidence "so weak as to do no more than create a mere surmise or suspicion." King Ranch, Inc. v. Chapman, 118 S.W.3d 742, 751 (Tex. 2003). In reviewing a summary judgment, we must view all of the summary judgment evidence in the light most favorable to the non-movant. See Roth v. FFP Operating Partners, L.P., 994 S.W.2d 190, 195 (Tex.App.–Amarillo 1999, pet. denied). However, when the summary judgment does not specify the grounds asserted in the motion that it was premised upon, it will be affirmed if any of the grounds presented are meritorious. Kelly, 71 S.W.3d at 422.

5

Applicable Law

The elements of a negligence claim are duty, breach of that duty, and damages proximately caused by the breach of duty.  See Doe v. Boys Clubs of Greater Dallas, Inc., 907 S.W.2d 472, 477 (Tex. 1995).

In assessing whether a duty exists, a reviewing court should consider factors such as the risk, foreseeability, and likelihood of injury weighed against the social utility of the actor's conduct; the magnitude of the burden in guarding against injury; and the consequences of placing the burden on the defendant.  Greater Houston Transp. Co. v. Phillips, 801 S.W.2d 523, 525 (Tex. 1990).  When the defendant distributes a dangerous article or agent, the defendant owes the public the degree of care proportionate to and commensurate with the dangers involved.  McAfee v. Travis Gas Corp., 137 Tex. 314, 153 S.W.3d 442, 447 (1941).  When the defendant distributes a dangerous article or agent, it owes a nondelegable duty to take all reasonable precautions to effectually protect third parties from injury.  Loyd v. Herrington, 143 Tex. 135, 182 S.W.2d 1003, 1004 (1944).[3]

Analysis

In its motions, Wylie contended that Huffaker could produce no evidence that either T&B, Ltd., or Wylie LP Gas, in its capacity as General Partner of T&B, Inc., were proper

---

[3] Because we conclude that Huffaker failed to produce more than a scintilla of evidence to raise a genuine issue of material fact as to the duty Wylie owed Huffaker or that Wylie breached that duty, it is not necessary for us to address Wylie's summary judgment ground that Huffaker could produce no evidence that any breach of duty proximately caused Huffaker's damages.

parties to this suit. According to the deposition transcript of Tipton, T&B, Ltd., owns the real property and some of the equipment that Wylie LP Gas leases. Wylie LP Gas is the General Partner of T&B, Ltd., and holds a one percent ownership interest in T&B, Ltd. However, this is all of the evidence presented in regard to these two defendants. Huffaker presented no evidence nor even alleges how T&B, Ltd., or Wylie LP Gas, as General Partner of T&B, Ltd., owed a duty to Huffaker, breached that duty, or caused the damages suffered by Huffaker as a result of the breach. Therefore, we affirm the trial court's no-evidence summary judgment as it relates to claims against T&B, Ltd., and Wylie LP Gas, in its capacity as General Partner of T&B, Ltd. See TEX. R. CIV. P. 166a(i); Ford Motor Co., 135 S.W.3d at 600.

As to Huffaker's claims against Wylie LP Gas, individually, Wylie contends that Huffaker is unable to present more than a scintilla of evidence to raise a genuine issue of material fact as to the duty, or standard of care, Wylie LP Gas owed to Huffaker or that Wylie LP Gas breached that duty.

Expert testimony is necessary when the alleged negligence is of such a nature as not to be within the experience of a layperson. Turbines, Inc. v. Dardis, 1 S.W.3d 726, 738 (Tex.App.–Amarillo 1999, pet. denied) (citing Roark v. Allen, 633 S.W.2d 804, 809 (Tex. 1982)). The expert testimony must establish both the standard of care and the violation of that standard. Id. However, even expert testimony that a particular action would be prudent, beneficial, recommended, or desirable cannot be taken as evidence of the standard of care or that the failure to take the action constituted a breach of that standard. Id. at 739.

In the present case, Huffaker provided no expert testimony as to any of the theories of liability asserted in his live pleading. Thus, we must analyze each of Huffaker's theories of liability and the evidence presented as to each to determine whether a layperson would be able to ascertain the applicable standard of care in the absence of expert testimony.

Huffaker contends that Wylie LP Gas was negligent in the manner in which it stored propane tanks at its facility. In support of this theory, Huffaker offered the testimony of Tipton that, at the time of the fire, Wylie LP Gas was storing 11,000 full 20 pound propane tanks at its facility. This factual testimony provides no insight into what the applicable standard of care would have been for Wylie LP Gas. In fact, the only evidence relating to the manner of storage of the propane tanks was Tipton's testimony that the tanks were stored in a manner that did not violate any rule or regulation of the Texas Railroad Commission and that Wylie LP Gas took the additional step of using dividers to ensure that the tanks did not touch one another, even though such a step was not required by any law. As such, we do not find the evidence sufficient to allow an ordinary layperson to conclude what the applicable standard of care was in regard to Wylie LP Gas's storage of its propane tanks nor that Wylie LP Gas breached this standard.

Huffaker also contends that Wylie LP Gas was negligent in failing to properly maintain, handle, and inspect the propane tanks in its storage. In support of this contention, Huffaker cites Bridges's testimony that there were times when employees of Wylie LP Gas did not properly check the tanks for leaks. However, Bridges also testified that he began working for Wylie LP Gas sometime in the late 1980s. There is no evidence of the frequency with which employees failed to properly check the tanks and, further, there

8

is no evidence as to how often a reasonable propane dealer would be expected to inspect the tanks in its storage. While the testimony does establish that Bridges felt that there were times when proper inspections were not performed, because the basis for his opinion is not shown, we cannot conclude what the applicable standard of care was in regard to Wylie LP Gas's maintenance, handling, and inspection of the tanks nor does the evidence raise a genuine issue of fact about that standard having been breached.

Huffaker contends that Wylie LP Gas was negligent in its filling of the propane tanks, particularly in that it would overfill the tanks which would then require that some of the liquid propane gas be bled off. Huffaker cites testimony of both Rebber and Bridges that there were times when tanks would be overfilled and the tanks would then have to be bled off. However, nothing in this testimony or in any evidence offered by Huffaker establishes that the applicable standard of care would be that no tanks ever be overfilled or that, if a tank was overfilled, that it should not be bled off. Because the filling of liquid propane gas tanks lies beyond the experience of an ordinary layperson, we conclude that Huffaker has provided no evidence of what the applicable standard of care is as it relates to filling propane tanks and, even more so, whether bleeding off the excess propane in an overfilled tank falls below the applicable standard of care.

Huffaker also contends that Wylie LP Gas failed to implement and monitor proper safety procedures. The evidence that Huffaker relies on in support of this contention is that Wylie LP Gas had not held fire drills, three employees were performing their work without supervision, and that there were times when employees did not properly check for leaks in the stored tanks. However, there is no evidence that a reasonable liquid propane dealer

9

would conduct fire drills or that, had Wylie held fire drills, the fire would have been contained. Further, there is no indication why employees needed to be supervised at all times or how the lack of supervision of these particular employees fell below the applicable standard of care. As to the failure to properly inspect the stored tanks, that issue was addressed above. Thus, there was no evidence presented that would allow a reasonable layperson to identify the applicable standard of care in relation to Wylie LP Gas's safety procedures nor that Wylie LP Gas's safety procedures fell below that standard.

Finally, Huffaker contends that Wylie LP Gas knowingly allowed smoking in close proximity to the propane tanks. Rebber testified that he has seen employees "walk right to the gate [of Wylie LP Gas's facility] and throw a cigarette down" and that it "was possible" that an employee was smoking just east of the propane tank storage area where the fire started.[4] Bridges testified that he was aware that the fire marshal found cigarette butts inside the yard and that the employees were allowed to smoke inside the confines of the gate of Wylie LP Gas's facility. However, because there was no evidence offered of the proximity of the area where smoking occurred to the propane tanks, we would have to speculate that it was an unsafe distance. While we believe that a layperson could conclude that smoking in close proximity to liquid propane gas tanks was a breach of the applicable standard of care, Huffaker offered no evidence to raise a genuine issue of material fact as to how close to the propane tanks employees were smoking.

---

[4] Rebber further testified that he had no way of knowing whether someone was smoking in that area at the time the fire started.

10

Because there is no expert evidence establishing the applicable standard of care owed by Wylie LP Gas and because a layperson would not be able to determine the applicable standard of care in regard to the theories of liability asserted by Huffaker, we conclude that the trial court was correct in granting Wylie's no-evidence summary judgment motions.

Conclusion

For the foregoing reasons, we affirm the trial court's judgment.


Mackey K. Hancock
Justice