UNION CARBIDE CORPORATION,
Appellant,

v.

Jimmie Lee BURTON, Appellee.

No. A2594.

Court of Civil Appeals of Texas,
Houston (14th Dist.).

June 3, 1981.
Rehearing Denied July 1, 1981.

**412**

Ervin A. Apffel, Jr., Douglas W. Poole, McLeod, Alexander, Powel & Apffel, Galveston, for appellant.

Phillip E. Hosey, Hosey, Presnall & Hosey, Galveston, Philip J. John, James Edward Maloney, Baker & Botts, Henry P. Giessel, Alice Giessel, Talbert, Giessel & Stone, Russel Ramsey, Ramsey & Murray, Victor A. Sturm, Hudgins, Hudgins, Sturm & Warrick, Houston, Ralph J. Bernsen, Sr., LaMarque, for appellee.

Before J. CURTISS BROWN, C. J., and PAUL PRESSLER and JUNELL, JJ.

PAUL PRESSLER, Justice.

This is an appeal from an award of damages against Union Carbide (hereafter Carbide). Appellee, Jimmie Lee Burton (hereafter Burton), an employee of Phil's Tire Shop, was severely injured when a RH5 degree wheel, on a truck owned by Carbide and on the premises of Carbide, explosively separated as Burton was attempting to place a tire gauge on the stem of the tire. Burton alleged in his Second Amended Petition that Carbide breached the non-delegable duty which it owed to him as a business-invitee. This duty was to exercise due care to make its premises and equipment reasonably safe. Burton alleged that Carbide breached that duty by allowing the wheel assembly to deteriorate through corrosion and abuse and by not replacing the wheel assembly before the accident. Burton also alleged that Carbide knew or should have known that the wheel assembly posed an unusual risk of danger to Burton and failed in its duty to warn Burton of such danger. Burton alleged that such negligence was the proximate cause of the accident and the resulting injuries to him. Carbide joined Phil Walker d/b/a Phil's Tire Shop (hereafter Phil's) and Firestone Tire & Rubber Company (hereafter Firestone) as third party defendants. Carbide sought contribution or indemnity from Phil's on the basis of an alleged written contract of indemnity and from Firestone on a theory of strict liability in tort for defective design and inadequate warnings.

The jury found Carbide negligent in failing to maintain the wheel assembly, to replace the wheel assembly, to give warning of the hazardous condition of the wheel assembly and in using the wheel assembly in a manner contrary to that in which a person of ordinary prudence would have used it. The jury also found that each of such acts of negligence was a proximate cause of the occurrence in question and awarded damages of $700,000.

The jury failed to find that Firestone was guilty of a design defect in the manufacture of the wheel assembly. In answer to special issues numbers 9 and 13, the jury found that it was not reasonably foreseeable by Firestone that owners and operators of the wheel assembly would not maintain the wheel and found that Burton was not putting air in the tire when the accident occurred. Special Issues as to adequate warnings concerning use and maintenance of the wheel assembly were conditioned on affirmative answers to special issues 9 and 13.

The jury also found that the indemnity clause in the contract between Phil's and Carbide was not conspicuous. On the basis of the jury findings and the stipulated medical expenses, the court entered judgment for Burton against Carbide in the amount of $719,575.96. This was later reduced to $569,575.96 with the granting of a Remittitur. The court awarded the intervenor, Great Central Insurance Company (hereafter Great Central), $45,380.08 as reimbursement for workman's compensation benefits previously paid to Burton, such sum to be taken from Burton's recovery. Burton's attorneys' fees of $13,500 were deducted from the Great Central recovery. A take-nothing judgment was entered in the third party action of Carbide against Phil's and Firestone.

Carbide asserts 28 points of error. Great Central appeals the award and division of Plaintiff's attorneys' fees out of its recovery. Burton complains of the granting of the Remittitur by the trial court. We will deal first with Carbide's appeal then with Burton's and finally with Great Central's.

*Carbide's Appeal re: Burton*

Carbide alleges that submission of special issue No. 1, was erroneous because Burton was the employee of an independent contractor and, therefore, Carbide owed Burton no duty to protect against or warn of the dangerous condition of the wheel assembly. Carbide relies upon the rule stated in *Shell Chemical Company v. Lamb,* 493 S.W.2d 742 (Tex.1973) and in *Abalos v. Oil Development Company of Texas,* 544 S.W.2d 627 (Tex.1976) that an occupier or owner of premises owes no duty to prevent the existence of, inspect for or warn against dangerous conditions on the premises which are inherent in the performance of work contracted for by an independent contractor who has control of the premises or instrumentalities in order to do its work, or which are created by an independent contractor in the performance of his work.

Appellant is correct in stating that an owner or occupier of premises is not an absolute insurer of the safety of all invitees on his premises and that any plaintiff must prove the existence and violation of a legal duty owed him by the Defendant owner. The threshold question in determining the existence of such a duty is that of the control of the premises or instrumentality which causes the injury. As held by the Supreme Court in the *Shell* case, cases in which the occupier's duty to warn or protect an independent contractor against dangerous conditions fall into two categories. In one, the danger does not arise out of the work of the independent contractor/invitee but exists on the premises prior to the assumption of control by the independent contractor. Here the owner is in a superior position to know of or discover the hidden dangerous conditions on his premises. In the other, where the dangerous condition is created by or arises out of the work activity of the injured invitee, the invitee is in a superior position so as to prevent, inspect for and eliminate or protect against the dangerous condition. *Shell Chemical Co. v. Lamb,* 493 S.W.2d at 746–748.

Here Carbide maintained such control over the tires and wheels on its trucks as to be in a superior position to inspect for, protect against and warn of the dangerous condition which gave rise to the accident. It is undisputed that the wheel assembly which explosively separated was manufactured in 1964 and since that time has been owned and used by Carbide. It is also undisputed that prior to 1972 Carbide repaired all of its tires without the help of independent contractors. Since that time several independent contractors serviced Carbide's truck tires. Phil's was responsible only for changing and fixing flats as they occurred and commenced work on a particular tire and wheel assembly only when called to do so by Carbide. Thus Carbide occupied a superior position with reference to the care and maintenance of the wheels and tires in question.

There is a distinction between those dangers inherent in the work of an independent contractor, such as the danger of falling from a steel beam while engaged in the construction of a roof, and those dangers or defective conditions which an independent contractor might possibly encounter but which arise out of or result from some act or failure to act upon the part of an owner or occupier of premises. *See Jenkins v. Fritzler Development Corporation,* 580 S.W.2d 63 (Tex.Civ.App.—Houston [1st Dist.] 1979, writ ref'd n. r. e.)

In the former situation, the owner or occupier of the premises has no duty to protect against a danger which arises out of the manner in which an invitee uses the premises. There are many situations in which an otherwise nondefective instrumentality may be put to dangerous but normal use by an independent contractor in the execution of his responsibilities. However the owner of the premises may not be charged with a duty to protect an invitee against the dangers arising out of such use. In the latter situation, however, where the danger results from a defective condition which arises out of some act or failure to act by the owner of the premises, the owner may be charged with a duty to inspect for and protect against such a dangerous condition. Here there is ample evidence that the

dangerous condition was the result of "run flat" damage to the wheel assembly, caused by underinflating the tire on the wheel for which only Carbide could be held responsible. Because there is evidence that the dangerous condition resulted from an act or failure to act of Carbide, it cannot be held that, as a matter of law, Carbide owed no duty to Burton to protect against the dangerous condition of the wheel assembly.

It must be noted that to this point we have discussed only the contention of Appellant that Carbide owed no duty as a matter of law to protect Burton from the danger inherent in his work as an independent contractor. We must address, as well, the issue of whether Burton's knowledge of the defective condition is an absolute defense which may be asserted by Carbide as was held in *Delhi-Taylor Oil Corporation v. Henry*, 416 S.W.2d 390 (Tex.1967). It is this no duty doctrine which was abolished in *Parker v. Highland Park, Inc.*, 565 S.W.2d 512 (Tex.1978). Following *Parker*, evidence of plaintiff's knowledge of the dangerous condition goes only to the question of the plaintiff's negligence in confronting the risk and acting upon it. The occupier's duty to warn and breach of that duty must be considered separately from the negligence of the plaintiff. *See Houston v. Bush*, 566 S.W.2d 33 (Tex.Civ.App.—Beaumont 1978, writ ref'd n. r. e.).

■ Carbide's second point of error contends that the verdict will not support the judgment because the trial court failed to submit special issues inquiring whether Carbide either created or maintained the dangerous condition or whether Carbide knew or should have known of the condition. Carbide did not object to the omission of such special issues prior to the submission of the charge to the jury. Therefore, any complaint concerning the omission of the issues is waived. Even if Carbide had preserved error, it was established as a matter of law Carbide knew or should have known of the dangerous condition. A reasonable inspection of the wheel assembly by Carbide would have revealed the "run flat" damage and corrosion. A reasonably pru-

dent person would have foreseen that such damage would probably result in injury to another. *See Seideneck v. Cal Bayreuther Associates*, 451 S.W.2d 752 (Tex.1970). Carbide occupied a superior position to inspect for such a condition. The mere assertion that the responsibility for such inspection had been delegated to several independent contractors is not sufficient to relieve Carbide of such duty. The existence of such a duty to inspect is not contingent upon the actual habits and practices of Carbide in servicing the wheels and tires. Evidence of such habits and practices bear on the issue of whether such duty was breached. Carbide's second point of error is overruled.

■ Carbide assigns sixteen points of error complaining that there was no evidence to support the submission of each of the negligence and proximate cause issues and that the findings of the jury on each of these issues was so contrary to the great weight and preponderance of the evidence as to be manifestly unfair and unjust. In determining "no evidence" points we must review only that evidence favorable to the Appellee. We may reverse only if there is not more than a scintilla of evidence to support the submission of the issues. *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965). Viewing only that evidence which is favorable to the verdict of the jury, there is clearly more than a scintilla of evidence in the record to support the submission to the jury of each of the subparts of the negligence issue. The same is true as to the corresponding proximate cause issue and each of its subparts. We overrule each of Carbide's no evidence points regarding the negligence and proximate cause issues. We also find, based upon the entirety of the evidence, sufficient support for the findings of the jury on negligence and proximate cause. Carbide's points of error numbers 4, 6, 8, 10, 12, 14, 16 and 18 are thus overruled.

*Carbide's Products Liability Complaint re: Firestone*

■ Carbide complains in its point of error number 20 that the trial court erred in refusing to submit, in place of Special

Issues 9 and 10, its requested wording which inquired whether Firestone failed to warn or instruct about "regular and periodic maintenance" instead of merely about "maintenance." Each party to litigation is entitled to have controlling issues submitted which are supported by the evidence and are essential to its theory of the case and which properly present fact issues raised by the pleadings. *Solgaard v. Texas & N. O. R. Co.*, 149 Tex. 181, 229 S.W.2d 777 (1950). There is no evidence in the record that regular and periodic maintenance of the RH5 degree wheel was required to maintain it in a safe working condition. Rather, the only evidence in the record is maintenance and corrosion prevention should coincide with the servicing of tires mounted on the wheels. There is no evidence to support the submission of these as requested by Carbide.

■ In its nineteenth point of error, Carbide complains that the trial court erred in refusing to admit into evidence a letter by Mr. Joseph Downs, then Assistant Counsel for Firestone. Carbide contends that the letter reflects the official position of Firestone that regular and periodic maintenance of the RH5 degree rim was necessary, and that the letter is, therefore, inconsistent with the position taken by Firestone and its expert witness at the trial. Carbide urges that the letter was an admission against interest made by an agent of Firestone within the scope of his express or implied authority to make the assertion. Even if this were established, the hearsay statement of an agent should be received against his principal as an admission against interest only where it has first been found by the trial court that the statement was authorized by the principal. *Big Mack Trucking Company, Inc. v. Dickerson*, 497 S.W.2d 283 (Tex.1973). With the denial by Firestone of the authority of Downs to speak for the company regarding the RH5 degree wheel and the absence of any other evidence showing the existence of such authority, the trial court did not abuse its discretion in refusing to admit the letter into evidence. Carbide's nineteenth point of error is overruled.

■ In its 21st and 22nd points of error, Carbide complains that the trial court erred in granting Firestone's Motion in Limine to exclude evidence of the reputation of the RH5 degree rim and in excluding the opinion testimony of Phil Walker. By way of a Bill of Exceptions, Phil Walker testified that the RH5 degree rim had a reputation in the tire service industry as the "head-shrinker" and that it was the most dangerous of all rims. Carbide contends that this testimony is material to the question of Firestone's duty to warn. This was the only attempt of Carbide to elicit testimony regarding the reputation of the RH5 degree rim. If error, the refusal by the trial court to admit his opinion testimony would be harmless error. Carbide has not shown that the omission of Walker's opinion testimony probably caused the rendition of an improper judgment. The jury never reached the warning issues having returned negative findings in response to those issues upon which answers to the warning issues were conditioned. Carbide's 22nd point of error is overruled.

■ The grant or denial of a Motion in Limine is not a ruling on the evidence and does not preserve error. Rather, granting a Motion in Limine merely requires that prior to the offer of certain evidence, there be a conference with the court outside the presence of the jury. *Hartford Accident and Indemnity Co. v. McCardell*, 369 S.W.2d 331 (Tex.1963). Carbide's 21st point of error is overruled.

*Carbide's Indemnity Claim Against Phil's*

■ In its 25th point of error, Carbide complains that the trial court erred in submitting Special Issue number 20 because it contends that the question of the conspicuousness of the contract was a question of law. Carbide then contends in its next two points of error, that there was no evidence to support the submission of this issue and that the jury's finding in response to the issue was so contrary to the overwhelming weight and preponderance of the evidence as to be manifestly unjust and unfair.

Whether Phil's had actual notice or knowledge of the existence of the indemnity provision is a question of fact and may be decided as a matter of law only where there is no room for reasonable minds to differ. *Goodyear Tire and Rubber Company v. Jefferson Construction Company*, 565 S.W.2d 916 (Tex.1978). Testimony by Phil Walker that he could not recall having seen the contract in question and that the indemnity provision on the back had never been discussed with him or pointed out to him constitutes more than a scintilla of evidence and thus supports the jury's findings on the issue of the conspicuousness of the contract. Carbide's points of error numbers 25, 26, and 27 are overruled.

Carbide urges in its 28th point of error that the trial court erred in refusing to grant its motion for remittitur for amounts greater than $150,000 because the jury's answer to the damages issue is grossly excessive, manifestly too large and contrary to the overwhelming weight and preponderance of the evidence. We disagree. The injuries sustained by Burton are sufficient to support the final judgment awarded by the court.

Carbide's 23rd and 24th points of error are without merit and are overruled.

### Burton's Cross-Points

Burton complains in two cross-points that the trial court erred in ordering a remittitur of $150,000. Burton first argues that Carbide abandoned its Motion for Remittitur upon filing its Amended Motion for New Trial which contained no reference to or request for a remittitur. Carbide originally filed a Motion for Remittitur and a Motion for New Trial on the same day. Our Supreme Court has held that it is error to consider two such motions filed together as separate motions for new trial. Therefore, being considered as one, Carbide abandoned its request for remittitur when it filed its Amended Motion for New Trial without renewing that request. *Airco, Inc. v. Tijerina*, 603 S.W.2d 785 (Tex.1980); *Steere v. State*, 445 S.W.2d 253 (Tex.Civ. App.—Houston [1st Dist.] 1969, writ

dism'd). However, the trial judge has the power to require a remittitur on its own motion as a part of its power to order a new trial. This power corresponds to that exercisable by the Appellant Court. *Gulf, Colorado & Santa Fe Railway Company v. Deen*, 158 Tex. 466, 312 S.W.2d 933 (1958). The exercise of such power is not, therefore, dependent upon a specific request for a remittitur where a Motion for New Trial has been filed and the trial court continues to have jurisdiction. We find that the court had power to grant the remittitur and that its granting was not an abuse of discretion.

### Great Central's Appeal

Great Central appeals the trial court's order awarding a fee to the attorneys for Burton of $13,500 out of the intervenor's subrogated recovery.

Tex.Rev.Civ.Stat.Ann. art. 8307 § 6a (Vernon Supp. 1980–81) authorizes the trial court to apportion fees allowable out of the subrogation recovery between the subrogated association's attorneys and the claimant's attorneys, taking into account the benefit accruing to the association as a result of each attorney's service. In the instant case, the attorneys for the intervenor were active in preparations for trial both in behalf of Burton and of the intervenor. In view of the amount of work undertaken by the intervenor's attorneys prior to the trial of this cause, we hold that the trial court abused its discretion in the apportionment of attorneys' fees.

That portion of the judgment awarding and apportioning attorneys' fees between the intervenor's attorneys and attorneys for Burton is severed and as severed shall be reversed and remanded for reconsideration by the trial court and for a more equitable apportionment of such fees out of the intervenor's subrogated recovery. The judgment is otherwise affirmed. Affirmed in part; reversed and remanded in part.