**ALAMO LUMBER COMPANY d/b/a
Alamo Ready–Mix Concrete,
Appellant,**

v.

**Tomas PENA, Appellee.**

No. 13–96–538–CV.

Court of Appeals of Texas,
Corpus Christi.

April 30, 1998.

Rehearing Overruled June 18, 1998.

Thomas F. Nye, Brin & Brin, Linda C. Breck, Corpus Christi, for appellant.

William L. Sciba, III, Cole, Cole & Easley, Victoria, for appellee.

Before SEERDEN, C.J., and YANEZ and CHAVEZ, JJ.

## OPINION

CHAVEZ, Justice.

Following a jury trial, the trial court entered judgment against Alamo Lumber Company d/b/a Alamo Ready–Mix Concrete ("Alamo") on Tomas Pena's negligence claims. We affirm.

### FACTUAL & PROCEDURAL SYNOPSIS

The record indicates that Alamo sells ready-mix concrete throughout South Texas. The accident underlying this lawsuit occurred on January 21, 1992 at Alamo's plant in Point Comfort, Calhoun County, Texas. The factual underpinning of the case is essentially uncontroverted.

Tomas Pena is a Mexican immigrant with a fifth-grade education and limited ability to communicate in the English language. In the underlying accident, he was injured by an exploding tire, which belonged to Alamo. When the accident occurred, Pena was the proprietor of Pena Tire Service ("Pena Tire").

Alamo's Point Comfort plant produces concrete which is delivered in large trucks. The concrete is delivered distances of approximately one and one-half to three miles. According to Neil Ackerman, a plant manager for Alamo, Alamo's safety procedures mandated inspecting the tires of trucks that transported concrete before and after every delivery trip. The record indicates that Alamo's management was cognizant of the importance of tire maintenance, and even circulated memoranda concerning this subject.

The record indicates that Alamo's concrete trucks were often driven off-road, engendering substantially greater tire wear than that received by ordinary passenger vehicle tires. When Alamo's truck tires needed servicing, they often called Pena Tire for assistance. The record also indicates that Alamo would always advise Pena Tire as to whether the particular tire in need of service had been run while "flat" (*i.e.*, devoid of air).

On January 20, 1992, at approximately 6:00 p.m., an Alamo representative contacted Pena Tire, requesting the repair of a tire at 6:00 a.m. the next day. Pena arrived at Alamo's plant at 6:00 a.m. on January 21, 1992. The truck with a bad tire was blocked by other trucks, and Pena waited until approximately 7:15 a.m. to begin the repair job. Alamo never told Pena that the tire he was repairing had been run flat. At some point before 8:00 a.m., the tire being repaired exploded while Pena was introducing compressed air into it.

The tire explosion threw Pena approximately eight feet, causing his body to slam against the tailgate of Pena Tire's truck, before Pena landed on pavement. Pena was seriously injured in the accident. An Alamo truck driver who heard the explosion likened its sound to that of a shotgun blast.

Upon investigation, it was determined that the tire explosion occurred when the tire's sidewall blew out. The sidewall blew out because metal filaments within the tire had broken as a result of driving on the tire while flat. In fact, uncontradicted evidence indicated that the tire had been driven between 75 and 100 miles while in a flat condition (despite the evidence of Alamo's policy of pre-trip and post-trip tire inspections), thus creating the condition which caused the explosion.

On March 17, 1992, Pena filed his original petition against Alamo. Opening statements in the jury trial occurred on June 4, 1996.

The jury was given a general negligence charge. In response to the first question, the jury found both Alamo and Pena to have proximately caused the accident. In response to the second question, concerning comparative responsibility, the jury found Al-

amo to have been 65% responsible, and Pena to have been 35% responsible. Above the third question, relating to the amount of damages, the following instruction was given:

If, in answer to Question 2, you have found that 50 percent or less of the negligence that caused the occurrence is attributed to Tomas Pena or if, in answer to Question 1, you have found that only the negligence of Alamo ... proximately caused the occurrence, then answer Question 3. Otherwise, do not answer Question 3.

The jury awarded Pena damages in the amount of $218,151.16.

On June 20, 1996, Pena moved for judgment on the verdict. On June 21, 1996, Alamo filed its motion for judgment non obstante veredicto and to disregard jury findings. On July 24, 1996, the trial court signed its judgment in favor of Pena. On August 5, 1996, Alamo filed its motions for new trial, remittitur, and to reform the judgment. On September 19, 1996, the trial court signed its order denying Alamo's motion for judgment non obstante veredicto and to disregard jury findings. On October 4, 1996, the trial court signed its order denying Alamo's motions for new trial, remittitur, and to reform the judgment. This appeal ensued.

Alamo raises eleven points of error on appeal, several of which are repetitive. The issues raised by Alamo's appellate contentions may generally be summarized as follows:

- whether this is exclusively a premises liability case (points 7, 8 and 10);
- whether Alamo owed a duty to Pena as an independent contractor (points two, three, four, five and six);
- whether the evidence supports the finding of proximate cause (points one and nine); and
- whether the jury was impermissibly informed as to the effect of its answers (point 11).

### DISCUSSION

We shall address Alamo's points of error in the order set forth above, as Alamo's arguments become more lucid if grouped as such and analyzed in turn.

### *Whether Premises Liability Theories Control*

◼ Alamo urges that Pena's failure to submit his case under a premises liability theory invalidates his recovery under general negligence principles. Alamo contends that, under the facts of this case, Pena could have only advanced a premises liability theory. We disagree.

Alamo directs our attention to the recent decision of the supreme court in *Clayton W. Williams, Jr., Inc. v. Olivo*, 952 S.W.2d 523 (Tex.1997). In that case, Clayton W. Williams, Jr., Inc. ("Williams") operated an oil and gas lease. *Id.* at 526. Williams hired Diamond M Onshore ("Diamond") to drill a well on Williams's lease. *Id.* David Olivo was employed by Diamond. *Id.*

Olivo fell from the area where he was working, landing on his back on "one of several drill pipe thread protectors that had been left on the ground by a previous shift. [Footnote omitted.]" *Id.* at 526–27. Olivo, who was left partially paralyzed by the accident, sued Williams for negligence and gross negligence. *Id.* at 527.

The supreme court stated that Williams was charged with overlapping duties as (1) a premises occupier, and (2) a general contractor who hired an independent contractor. *Id.* The supreme court stated that "[a] general contractor in control of the premises may be liable for two types of negligence in failing to keep the premises safe: that arising from an activity on the premises, and that arising from a premises defect." *Id.* The court went on to state that "[t]his is not a negligent-activity case because Olivo alleges that he was injured by thread protectors previously left on the ground, not as a contemporaneous result of someone's negligence." *Id.* (citing *Keetch v. Kroger Co.*, 845 S.W.2d 262, 264 (Tex.1992)(holding that recovery on a negligent activity theory requires that the plaintiff be harmed by or as a contemporaneous result of the activity itself); *H.E. Butt Grocery Co. v. Warner*, 845 S.W.2d 258, 259 (Tex.1992)(same)). Instead, *Olivo* is a premises defect case. *Clayton W. Williams*, 952 S.W.2d at 527.

The *Olivo* opinion recognizes that negligent activity and premises defect theories may coexist, depending on the facts of a particular case. *Id.* The particular facts of *Olivo* clearly establish it as a premises liability case, thus distinguishing *Olivo* from the case at bar.

Olivo fell from a pipe rack, which had been erected in conjunction with a well. *Clayton W. Williams,* 952 S.W.2d at 526. By definition, a well is a stationary object, and its existence in *Olivo* ultimately related to Williams. The alleged negligence was attributable to the presence of the thread protectors which had been left on the ground by a previous shift's workers. *Id.* at 526–527. Under those facts, a negligent activity theory would not be supported by the contemporaneity element. *See id.* at 527 (citing *Keetch,* 845 S.W.2d at 264; *H.E. Butt Grocery Co.,* 845 S.W.2d at 259). Accordingly, Olivo's exclusive basis of recovery was necessarily under a premises liability theory. *Clayton W. Williams,* 952 S.W.2d at 527.

In the case at bar, Pena was injured by the explosion of a truck tire. The instrumentality which caused Pena's injuries was inherently mobile (unlike the well and related components in *Olivo* ). To that end, Pena's explosion-related claims against Alamo would not have differed if, for example, Pena had been summoned to repair Alamo's tire at a roadside or at the parking lot of another establishment. The tire which exploded was not tied to a real property fixture (as was the instrumentality in *Olivo* ). This case is also distinguishable from *Olivo* in that the thread protectors in *Olivo* posed a general danger to all working on the premises, whereas in this case, the tire posed a danger only to Pena, and the danger to Pena was directly attributable to the contemporaneous activity of Alamo. At the time of the explosion, Pena was working on the tire because Alamo had directed him to do so, and he inflated it to the point of explosion because Alamo did not warn him of the danger presented by that activity. Thus, liability theories beyond the realm of premise defects exist in the present case.

In *Keetch* the Texas Supreme Court confronted a case involving a slippery spot on a grocery store floor that had been created by the spraying of plants in the store's floral section and held that the trial court did not err in refusing to submit a negligent activity theory. The court explained that "at some point, almost every artificial condition can be said to have been created by an activity" and "decline[d] to eliminate all distinction between premises conditions and negligent activities." In the same way, we acknowledge that every accident occurs *somewhere,* and decline to eliminate all distinction between premises conditions and negligent activities by accepting Alamo's contention, which would seem to limit every accident resulting from negligence to a premises liability analysis.

Further, Pena alleged, *inter alia,* in his live petition at trial the following negligent acts of Alamo:

- failure to provide a safe tire to repair;
- failure to warn "of the impending dangers of said dangerous tire;"
- failure to "promulgate and enforce proper and safe rules for the safe conduct of said work;" and
- failure "to alert [Pena] [to] the danger of inflating the tire."

We believe the foregoing allegations (which were established by evidence in the record) are tantamount to "contemporaneous activity" allegations. As such, Pena's allegations of harm are materially different from the plaintiff's facts in *Olivo.* The contemporaneity element exists in the present case, distinguishing it from *Olivo.*

Alamo suggests that Pena might have sought to advance a premises liability claim, based on the case of *Union Carbide Corp. v. Burton,* 618 S.W.2d 410 (Tex.Civ.App.— Houston [14th Dist.] 1981, writ ref'd n.r.e.). In that case, the plaintiff's facts were nearly identical to those in the instant case. 618 S.W.2d at 412. Burton, an independent contractor, was injured when a tire belonging to Union Carbide exploded on Union Carbide's premises. *Id.* However, the similarity of the facts of the present case to those in *Union Carbide* did not require Pena to pursue his claims in the precise manner in which Burton pursued his claims against Union Carbide.

*Union Carbide* is not controlling in the present case.

Based on the facts of this case, we hold that Pena was not exclusively limited to pursuing premises liability theories.[1] The seventh, eighth and tenth points of error are overruled.

### Whether Alamo Owed a Duty to Pena as an Independent Contractor

■ Pena's cause of action rests on negligence on the part of Alamo. The common-law doctrine of negligence consists of three elements: (1) a legal duty owed by one person to another; (2) a breach of that duty; and (3) damages proximately resulting from that breach. *El Chico Corp. v. Poole*, 732 S.W.2d 306, 311 (Tex.1987); *Rosas v. Buddies Food Store*, 518 S.W.2d 534, 536 (Tex. 1975); *Scott Fetzer Co. v. Read*, 945 S.W.2d 854, 859 (Tex.App.—Austin 1997, writ granted). The threshold inquiry in a negligence case is whether a duty exists. *El Chico Corp.*, 732 S.W.2d at 311. In its second, third, fourth, fifth, and sixth points of error, Alamo asserts that, because Pena was an independent contractor, it owed no legal duty to him. We disagree.

■ Whether the defendant owes a legal duty to the plaintiff is a question of law. *Mitchell v. Missouri–K.–T. R.R.*, 786 S.W.2d 659, 662 (Tex.1990). The general rule is that an employer or owner is not liable for the acts or omissions of its independent contractors. *See Hoechst–Celanese Corp. v. Mendez*, 967 S.W.2d 354, 355 (Tex.1998); *Abalos v. Oil Dev. Co.*, 544 S.W.2d 627, 631 (Tex. 1976). Texas courts, however, have recognized many exceptions to this general rule of non-liability. *Scott Fetzer Co.*, 945 S.W.2d at 859–60 (citing *Redinger v. Living, Inc.*, 689 S.W.2d 415 (Tex.1985) (employer of independent contractor is liable if it retains a right of control over contractor's work and fails to use reasonable care in exercising that control); *Loyd v. Herrington*, 143 Tex. 135, 182 S.W.2d 1003 (1944) (employer of independent contractor has non-delegable duty to ensure

that inherently dangerous work is performed safely).

Both the rule and its exceptions are derived from the same underlying policies. *Scott Fetzer Co.*, 945 S.W.2d at 859–60. The general rule encompasses the notion that employers should not be held responsible for activities they do not control and, in many instances, lack the knowledge and resources to direct. *Id.*(citing RESTATEMENT (SECOND) OF TORTS § 409, cmt. b (1965)). The exceptions largely reflect special situations where the employer is in the best position to identify, minimize, and administer the risks involved in the contractor's activities. *Scott Fetzer Co.*, 945 S.W.2d at 860.

We shall first analyze the duty element of Pena's claim under the seminal case of *El Chico*, 732 S.W.2d 306. In that case, the supreme court reiterated that "if a party negligently creates a situation, then it becomes his duty to do something about it to prevent injury to others if it reasonably appears or should appear to him that others in the exercise of their lawful rights may be injured thereby." *Id.* at 311 (citing *Buchanan v. Rose*, 138 Tex. 390, 159 S.W.2d 109, 111 (1942)).

In the case at bar, the tire Pena was asked to repair was driven between 75 and 100 miles while flat. Based on testimony from Alamo's representatives, Alamo's company policy required that particular tire to have been checked twenty-five times or more during the period it was run while flat. The flat tire nevertheless remained undiscovered. In addition, Alamo customarily warned Pena when a tire had been run while flat, demonstrating (along with other evidence) Alamo's awareness of the dangers presented by worn-out concrete truck tires. Under *El Chico*, the facts of this case placed Alamo under a duty to warn Pena.

Although we believe that a duty to provide for Pena's safety existed, as stated above, in the interests of justice we shall also examine the *Redinger*and *Loyd*exceptions to the general rule of general contractor non-liability in Texas jurisprudence.

---

1. In addition, the general negligence submission accorded with Texas Rule of Civil Procedure

277's policy favoring broad-form questions.

The *Redinger* exception, which was recently revisited in *Hoechst–Celanese Corp.,* provides for vicarious liability if the general contractor maintains a right of control. *Hoechst–Celanese Corp.,* 967 S.W.2d at 355, citing *Redinger,* 689 S.W.2d at 418. "An employer's duty of reasonable care is commensurate with the control it retains over the independent contractor." *Hoechst–Celanese Corp.,* 967 S.W.2d at 355. For the exception to apply, there must be such a retention of supervision that the contractor is not entirely free to do the work his own way. 967 S.W.2d at 355–56. Under this scenario, the independent contractor is owed "a duty of reasonable care to protect him from work-related hazards." 967 S.W.2d at 357.

In the present case, by customarily advising Pena as to whether a particular tire had been run while flat, Alamo (at least implicitly) guided Pena's decision as to whether a particular tire should be replaced or repaired. On the date of the accident, when Pena arrived at Alamo's Point Comfort plant at 6:00 a.m., the truck requiring attention was blocked by other Alamo trucks. Alamo caused Pena to wait until 7:15 a.m. to begin repairing the tire which would soon thereafter explode. Alamo was clearly able to direct the location, timing and scope of Pena's work. We believe these and other factors evidence a right of control on Alamo's part implicating the *Redinger* exception.

The *Loyd* exception applies to inherently dangerous work. *Loyd,* 182 S.W.2d at 1004. Based on the record, we are inclined to believe that the repair of concrete truck tires is inherently dangerous work. In any event, the repair of concrete truck tires which have been driven 75 to 100 miles while flat is certainly inherently dangerous. As such, Alamo is charged with the duty "to exercise due care with respect to the performance of the work." *Id.* Because Alamo deviated from its custom of alerting Pena that he was to repair a tire that had been run flat, we hold that Alamo thereby breached its duty of due care under *Loyd.* Therefore, the *Loyd* exception also applies to the facts of this case.

We hold that Alamo owed a duty to Pena under the facts of this case. The second, third, fourth, fifth and sixth points of error are overruled.

## *Proximate Cause*

By its first and ninth points of error, Alamo complains of the legal and factual sufficiency of the evidence to support a finding of proximate cause.

Reviewing Alamo's legal sufficiency challenges, we consider only the evidence and inferences tending to support the fact finding. *Leitch v. Hornsby,* 935 S.W.2d 114, 118 (Tex.1996). We disregard all contrary evidence and inferences. *Id.* (citing *Transport Ins. Co. v. Faircloth,* 898 S.W.2d 269, 275–76 (Tex.1995); *Browning–Ferris, Inc. v. Reyna,* 865 S.W.2d 925, 928 (Tex.1993)). If there is any evidence of probative force to support the finding, we overrule the points of error. *Leitch,* 935 S.W.2d at 118 (citing *Southern States Transp., Inc. v. State,* 774 S.W.2d 639, 640 (Tex.1989); *Stafford v. Stafford,* 726 S.W.2d 14, 16 (Tex.1987)). If there is more than a scintilla of probative evidence in the record to support the finding, a no evidence challenge fails. *Leitch,* 935 S.W.2d at 118. Analyzing Alamo's factual sufficiency challenges, we consider and weigh all the evidence, only setting aside findings so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986).

We note that proximate cause consists of (1) cause-in-fact and (2) foreseeability. *See Leitch,* 935 S.W.2d at 118. Foreseeability is judged by a reasonable person standard. *See, e.g., id.* The test for cause in fact is whether the negligent act or omission was a substantial factor in bringing about the injury, without which the harm would not have occurred. *Doe v. Boys Clubs of Greater Dallas,* 907 S.W.2d 472, 477 (Tex. 1995). Obviously Alamo's actions in directing Pena to repair the tire without warning him that it had been run while flat for approximately 75 to 100 miles was a substantial factor in bringing about the injury, without which the harm would not have occurred. We next consider whether the tire explosion was a foreseeable event for Alamo.

The record discloses the following factors weighing in favor of determining that the tire explosion was a foreseeable event:

- Alamo's management was aware of the importance of tire maintenance, and even circulated memoranda on the subject.
- Alamo had a policy (from which it obviously deviated in the present case) which required frequent inspection of concrete truck tires.
- The tire in issue had been driven 75 to 100 miles while flat.
- Alamo customarily warned Pena when a tire had been driven on while flat, although Pena was not so warned prior to the incident in question.

The foregoing factors present more than a scintilla of evidence that the explosion was foreseeable, and therefore surmount Alamo's legal sufficiency challenges.

We now consider the record as a whole in determining Alamo's factual sufficiency challenges. At most, the record discloses only one factor weighing against a determination that the explosion was foreseeable: that Alamo is a concrete manufacturer and therefore does not possess tire expertise. The significance of that factor is eroded by the fact that Alamo is a commercial operator of heavy trucks. Further, there is no evidence in the record that Pena ever held himself out as an expert to whom a large corporate entity such as Alamo could defer in truck safety matters.

Reviewing the record as a whole, finding the explosion to have been foreseeable is not contrary to the overwhelming weight of the evidence. The foreseeability element is supported by factually sufficient evidence. We therefore also hold that legally and factually sufficient evidence supports the issue of proximate cause. The first and ninth points of error are overruled.

### Whether the Jury was Impermissibly Informed as to the Effect of Its Answers

As noted earlier, above the third jury question (relating to the amount of damages), the following instruction was given:

If, in answer to Question 2, you have found that 50 percent or less of the negligence that caused the occurrence is attributed to Tomas Pena or if, in answer to Question 1, you have found that only the negligence of Alamo ... proximately caused the occurrence, then answer Question 3. Otherwise, do not answer Question 3.

In its eleventh point of error, Alamo contends that the instruction (1) was a comment by the trial court on the weight of the evidence, and (2) "told the jury improperly of the effect of their answers." If true, the instruction would violate Texas Rule of Civil Procedure 277.

Under rule 277, "[t]he court may predicate the damage question or questions upon affirmative findings of liability." TEX.R. CIV. P. 277. The rule also provides:

The court shall not in its charge comment directly on the weight of the evidence or advise the jury of the effect of their answers, but *the court's charge shall not be objectionable on the ground that it* incidentally constitutes a comment on the weight of the evidence or *advises the jury of the effect of their answers when it is properly a part of an instruction or definition.*

*Id.* (Emphasis added.) The instruction set forth above is clearly not a "comment directly on the weight of the evidence." Therefore, we determine whether the instruction improperly advised the jury as to the effect of its answers.

Error in the charge is reviewed under an abuse of discretion standard. *Texas Dept. of Human Serv. v. E.B.*, 802 S.W.2d 647, 649 (Tex.1990). To establish reversible error, the complaining party must show that the trial court acted arbitrarily, unreasonably, or without consideration of guiding rules and principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985), *cert. denied*, 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986). "[A] clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion...." *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex.1992).

The question submitted to the jury followed the Texas Pattern Jury Charges. Al-

though we are aware that the Texas Pattern Jury Charges are not "law," they are heavily relied upon by both the bench and bar. *See, e.g., Gunn Buick, Inc. v. Rosano*, 907 S.W.2d 628, 632 (Tex.App.—San Antonio 1995, no writ); *Westchester Fire Ins. Co. v. Lowe*, 888 S.W.2d 243, 253 (Tex.App.—Beaumont 1994, no writ). In any event, "[i]t would have been pointless to require the jury to waste their time and efforts by requiring them to make a finding on damages after they had negatively answered the liability issues." *H.E. Butt Grocery Co. v. Paez*, 742 S.W.2d 824, 825 (Tex.App.—Corpus Christi 1987, writ denied).

We cannot say that the submission of the 50% bar instruction amounted to a clear failure by the trial court to analyze or apply the law, and therefore rule 277 was not violated. The eleventh point of error is overruled.

The judgment of the trial court if AFFIRMED.