NUMBER 13-98-295-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI


___________________________________________________________________


JAMES R. BARTLETT, LINDA BETH BARTLETT, 

AND WILLIAM L. ANDERSEN
, Appellants,


v.



GUNTER SCHMIDT
, Appellee.

___________________________________________________________________


On appeal from the 156th District Court


of San Patricio County, Texas.


___________________________________________________________________


O P I N I O N



Before Chief Justice Seerden and Justices Dorsey and

Chavez

Opinion by Chief Justice Seerden



 This is an appeal of a judgment, based upon a jury verdict, which
awards appellee, Gunter Schmidt, $58,700, plus pre-judgment interest,
against James R. Bartlett, individually; Linda Beth Bartlett, individually,
and as co-independent executrix of the Estate of Martha Francis Pugh,
deceased; William Andersen, individually and as co-independent
executor of the Estate of Martha Francis Pugh; Stewart Title of San
Patricio County, Inc.; and Stewart Title Guaranty Company. The
judgment furthermore awards appellee the sum of $499,000.00,
including pre-judgment interest against James R. Bartlett, individually;
Linda Beth Bartlett, individually and as co-independent executrix of the
estate; and William Anderson, individually and as co-independent
executor of the estate. While all parties against whom the judgment
was taken were originally parties to this appeal, the Stewart Title
Companies have settled their part of the dispute and have been
dismissed from this appeal.

 This lawsuit arose with the purchase of real estate by appellee
from Mrs. Bartlett, Andersen, and Thomas Heard Martin (who was
absolved of liability in the judgment) through their broker, James R.
Bartlett. The basis for the damages is that the property was restricted
for only residential use; whereas, appellee intended to use the property
for commercial purposes. The facts were known to appellants but not
to appellee. The title companies negligently represented to appellee that
there were no restrictions on his use of the property.

General Factual Statement


 Summarizing the facts of this case in the light most favorable to
the jury's verdict and the judgment, appellee purchased the property in
question with the intention of using it as a shipyard to construct ocean-going vessels. The suitability of the property originally came to his
attention when he personally viewed it. A sign on the property advised
it was for sale and gave a telephone number for "Bartlett Real Estate
Company, Inc." Schmidt had a realtor in Ingleside, Bill McAllister,
contact James Bartlett, of Bartlett Real Estate, also the husband of
Linda Beth Bartlett, to make an offer to purchase the property. When
Schmidt and Bartlett met to discuss the purchase, Schmidt told Bartlett
of his intention to use the property to construct ships. Bartlett orally
advised him there were no restrictions on the property and he could use
it for anything he wanted. 

 McAllister, on Schmidt's behalf, submitted an earnest money
contract (EMC) to Bartlett and Schmidt on a form provided by the
Texas Association of Realtors entitled "ONE TO FOUR FAMILY
RESIDENTIAL EARNEST MONEY CONTRACT- RESALE, ALL CASH,
ASSUMPTION, THIRD PARTY CONVENTIONAL OR SELLER'S
FINANCING." It was signed by the parties and provided for a title
insurance policy to be issued by Stewart Title.

 The title company issued a title commitment to Schmidt which
showed covenants and restrictions referenced to a deed and plat
involving "Ingleside Cove area and vicinity." The deed and "Covenants
and Restrictions" restricted the use of portions of land not being
purchased by Schmidt to uses that would prevent Schmidt from
constructing his desired building on the restricted property. The
documents submitted by the title company to Schmidt had no
restrictions on the land being purchased by him. However, the title
company did not furnish Schmidt with the documents replating and
modifying the restrictions to include the property acquired by Schmidt. 

 The commitment also specifically excepted from coverage of the
title insurance:

 The Covenants, terms, conditions, restrictions and
reservations contained in Warranty Deed dated June 18,
1958 from INGLESIDE LAND COMPANY to W. D. WELLER
INVESTMENT COMPANY, recorded in Volume 234, Page
552, Deed Records of San Patricio County, Texas.


 Schmidt examined these documents and determined the
restrictions did not apply to the property he was buying. He also
contacted his attorney in Germany(1) who advised Schmidt that his
property was not burdened by the restrictions and covenants. The sale
of the property to Schmidt was completed in May or June, 1994.

 When Schmidt began to lay the foundation for his shipbuilding
enterprise, he was advised that the property had been annexed by
Ingleside on the Bay and limited to residential use only. After being
informed of the limitations, Schmidt continued landscaping the property
and obtained a building permit to build the facility and to use the
property as his residence.

Negligent Misrepresentation, Fraud, and DTPA Claims


 The jury found Bartlett liable on three distinct theories of liability:
negligent misrepresentation, fraud, and deceptive trade practices. By
their first issue, appellants contend that there is no evidence that
Schmidt relied on any representations made by Bartlett. By their
second issue, appellants argue that there is no proof that Bartlett's
representations were either the producing cause or the cause-in-fact of
Schmidt's damages. 

A. Fraud and Negligent Misrepresentation

 Both fraud and negligent misrepresentation require a showing of
reliance. See Federal Land Bank Ass'n of Tyler v. Sloane, 825 S.W.2d
439, 442 (Tex. 1991) (negligent misrepresentation); Eagle Properties,
Ltd. v. Scharbauer, 807 S.W.2d 714, 723 (Tex. 1990) (fraud). 

 Appellants argue that Schmidt's consultation with an attorney
regarding his purchase of the property constitutes an independent
investigation which they allege negates all of his claims. Many courts
have held that

 where false and fraudulent representations are made
concerning the subject-matter of a contract, but the person
to whom they are made, before closing the contract inspects
and examines the subject of the contract, or conducts an
independent investigation into the matters covered by the
representations, which is sufficient to inform him of the
truth, and which is not interfered with or rendered nugatory
by any act of any other party, it is presumed that he places
his reliance on the information acquired by such
investigation and on his own judgment based on such facts,
and not on the representations made to him, and therefore
he cannot have relief because his bargain proves
unsatisfactory to him.


Marcus v. Kinabrew, 438 S.W.2d 431, 432 (Tex. Civ. App.--Tyler 1969,
no writ); see also Kolb v. Texas Emp. Ins. Ass'n, 585 S.W.2d 870, 872
(Tex. Civ. App.--Texarkana 1979, writ ref'd n.r.e.); Lone Star Machinery
Corp. v. Frankel, 564 S.W.2d 135,138 (Tex. Civ. App.--Beaumont 1978,
no writ); Mayfield Petroleum Corp v. Kelly, 450 S.W.2d 104, 100 (Tex.
Civ. App.--Tyler 1970, writ ref'd n.r.e.); Mann v. Rugel, 228 S.W.2d
585, 587 (Tex. Civ. App.--Dallas 1950, no writ). 

 The common thread of the decisions reaching this conclusion is
that, regardless of the result of his investigation, the buyer's decision
to undertake such an investigation indicates that he or she is not relying
on the seller's representations about the property. The record shows
that Schmidt undertook such an investigation. Prior to his purchase of
the property, Schmidt asked third parties to review conveyancing
documents specifically to assure that no restrictions would interfere
with his development of the property for his intended purpose. He did
this after specifically asking Bartlett about the very same thing. He did
not rely on Bartlett's representations in making his decision to purchase
the property. 

 Accordingly, as a matter of law, Schmidt cannot recover for either
negligent misrepresentation or fraud. Because we hold that Schmidt
cannot recover for negligent misrepresentation or fraud, we need not
reach appellants' seventh issue concerning Schmidt's failure to allege
negligence in his petition. See Tex. R. App. P. 47.1. We also need not
consider the causation element necessary to support either claim. See
Alamo Lumber Co. v. Pena, 972 S.W.2d 800, 806 (Tex. App.--Corpus
Christi 1998, no writ) (negligent misrepresentation); Fun Time Centers,
Inc. v. Continental Nat'l Bank, 517 S.W.2d 877, 883 (Tex. Civ. App.--Tyler 1974, writ ref'd n.r.e.). 

 Accordingly, because Schmidt did not rely on Bartlett's
representations, we hold that he cannot recover for either fraud or
negligent misrepresentation.

B. DTPA Claims

 At the time of the actions complained of in this case, the DTPA
provided recovery for false, misleading, or deceptive acts or practices in
the conduct of any trade or commerce. Tex. Bus. & Comm. Code Ann.
§ 17.46(b)(23) (Vernon Supp. 1994).(2) To recover damages for any
deceptive act or practice under that version of the Act, it is necessary
to prove the conduct was a "producing cause" of the injuries sustained. 
Weitzel v. Barnes, 691 S.W.2d 598, 600 (Tex. 1985). Producing cause
is an "efficient, exciting or contributing cause, which in a natural
sequence produced injuries or damages complained of, if any." Rourke
v. Garza, 530 S.W.2d 794, 801 (Tex. 1975). In other words, producing
cause "requires proof that an act or omission was a substantial factor
in bringing about injury which would not have otherwise occurred." 
Prudential Ins. Co. of Am. v. Jefferson Assoc., Ltd., 896 S.W.2d 156,
161 (Tex. 1995). There may be more than one producing cause of a
plaintiff's injury.  Id. 

 Texas courts have imputed the concept of intervening or
superseding causes into the DTPA proof as well. See Doe v. Boys Clubs
of Greater Dallas, Inc., 907 S.W.2d 472, 481 (Tex. 1995). This requires
that the causal connection between the alleged wrong and the
plaintiff's injury be unbroken. Id. If the defendant can demonstrate that
a "new and independent basis" for the plaintiff's actions exists, such
proof may negate the assertion that the defendant's acts were the
producing cause of the plaintiff's injury. See id. at 475; Dubow v.
Dragon, 746 S.W.2d 857, 860 (Tex. App.--Dallas 1988, no writ); Riojas
v. Lone Star Gas Co., 637 S.W.2d 956, 959 (Tex. App.--Fort Worth
1992, writ ref'd n.r.e.).

 In sustaining his or her burden of proof, a plaintiff need not show
either reliance or foreseeability under this version of the DTPA. Weitzel,
691 S.W.2d at 600; Camden Mach. & Tool Inc. v. Cascade Co., 870
S.W.2d 304, 311 (Tex. App.--Fort Worth 1993, no writ). Reliance may,
nevertheless, be a factor in deciding whether the defendant's conduct
was a producing cause of damages to the plaintiff. See Cianfichi v.
White House Motor Hotel, 921 S.W.2d 441, 443 (Tex. App.--Houston
[1st Dist.] 1996, writ denied); Century 21 Real Estate Corp. v.
Hometown Real Estate Co., 890 S.W.2d 118, 130 (Tex. App.--Texarkana
1994, writ denied). Regardless, the plaintiff must show that there is
some unbroken causal connection between the allegedly deceptive act
and the actual damages suffered. See Prudential, 896 S.W.2d at 161.

 In the context of real estate sales, under Texas law, when a seller
makes an affirmative representation, the law imposes a duty upon the
seller to know whether such a statement is true. First Title Co. of Waco
v. Garrett, 860 S.W.2d 74, 76 (Tex. 1993). A seller and its agent may
be liable under the DTPA for affirmative misrepresentations. Henry S.
Miller Co. v. Bynum, 797 S.W.2d 51, 55 (Tex. App.--Houston [1st Dist.]
1990) aff'd, 836 S.W.2d 160 (Tex. 1992). 

 The record in this case reflects that Schmidt was visiting the
Ingleside area, looking for an appropriate plot of land upon which to
build and maintain his shipbuilding facility, or "hangar." One day in
April of 1994, Schmidt observed a property which he deemed suitable
for his purposes, noticed the property was for sale, and attempted to
contact the listed seller, Bartlett Real Estate Company. Finding that he
was unable to contact anyone at the listed number, he returned to
Ingleside, and contacted the first realtor he saw, Bill McAllister. After
some conversations with McAllister, during which Schmidt's intended
use of the property was discussed in general and somewhat vague
terms, McAllister attempted to and did contact James Bartlett.

 McAllister engaged Bartlett in a preliminary conversation which
focused primarily upon the price of the property. After discovering that
the price Schmidt was willing to offer was substantially less than the
price Bartlett was willing to accept for the property, McAllister put
Schmidt on the phone to negotiate with Bartlett. The two engaged in
a discussion, during which Schmidt told Bartlett that he was "going to
make sailing catamarans." Schmidt claims Bartlett assured him that
there were no restrictions on the property to prohibit him from
conducting his business:

 Q [Schmidt's counsel]: Now tell the jury what specific
[sic] was said to you by Jim
Bartlett about restrictions on that
property.


 A [Schmidt]: He confirmed that what I've
already been told [by McAllister],
there were no restrictions, and I
do ever what [sic] I want, and it
was out of city limits, it was not
zoned.


This is the sole statement upon which Schmidt bases his DTPA claim
against Bartlett.(3)

 Schmidt and Bartlett agreed to enter into an earnest money
contract which required Schmidt to deposit $1000 and Bartlett to
secure a title commitment. The final sale of the property was
conditioned upon a showing of good title by the title company. Once
the earnest money contract was executed, the title company incurred
an obligation to show any restrictions on the use of the property. The
title company provided Schmidt with numerous documents as part of
its title commitment, including a schedule of relevant covenants and
restrictions. Schmidt read the title commitment and the schedule of
covenants and restrictions. He concluded that since he was purchasing
lots 1 through 12 of Block 57, and since the only listed restrictions
applied to lots 15 through 24 of Block 57, his property was not
encumbered by the restrictions.(4) Schmidt consulted with his German
attorney, who likewise concluded that the property Schmidt sought to
purchase was not encumbered. After conducting his double check,
Schmidt closed the sale of the property.

 While we accept as true Schmidt's assertion that Bartlett's
statements were a cause of his damages, his decision to enter into the
earnest money contract and the subsequent acts of reviewing the title
commitment were "new and independent" causes of those injuries. 

 The Supreme Court of Texas has recognized that real estate
purchasers often rely upon title commitments in making decisions to
purchase property. See Garrett, 860 S.W.2d at 77. Reliance on such
external assessments of the feasibility of purchasing land has been held
to introduce a "new and independent" cause of the buyer's damages in
several pertinent DTPA cases, thus negating the producing cause
element of a DTPA claim. See Camden Mach. & Tool, 870 S.W.2d at
313; Dubow, 746 S.W.2d at 860.


 The Dallas Court of Appeals has held that a careful subsequent
investigation was an intervening and superseding, "new and
independent" cause of a buyer's damages. See Dubow, 746 S.W.2d at
860. In Dubow, appellants sought to purchase a home from appellees. 
Id. at 858. After consulting with experts and conducting further
investigation which disclosed certain defects in the house, appellants
renegotiated the purchase price for the home. Id. at 859. When
appellants were dissatisfied with the house, they subsequently claimed
that statements made by the sellers were the producing cause of their
injuries. Id. at 860. The court of appeals affirmed a summary judgment
for the sellers, concluding that "the 'careful inspection of the house' and
the 'professional opinions' obtained by the [appellants] were the sole
efficient cause of the [appellants'] actual damages." Id. The court
concluded that the sellers proved as a matter of law that their
representations were not the producing cause of the appellants'
injuries. Id. at 861.

 Similarly, the Fort Worth Court of Appeals has held that a seller's
representations were not the producing cause of the buyer's injuries
where the buyer undertook his own investigation prior to purchasing
the property. Camden Mach. & Tool, Inc., 870 S.W.2d at 313. In
Camden, the buyer sought an appraisal of the building he sought to
purchase. Id. at 307. After the appraisal revealed a previously-undisclosed crack in the foundation, the buyer investigated the cost to
repair the foundation and received varying estimates. Id. at 308. 
Despite the seller's unwillingness to renegotiate and the buyer's own
awareness that the foundation problem was severe, the buyer decided
to "bite the bullet" and absorb the repair costs in his purchase price. Id.
 The court concluded that the buyer's subsequent investigation and
continued habitation established that he would have purchased the
building regardless of seller's representations, and thus, established as
a matter of law that the seller's statements were not the producing
cause of his injuries. Id. at 313. 

 While neither of the foregoing cases is dispositive of the present
dispute, they are helpful to our analysis. In each, the court concluded
that the subsequent investigation by the buyer was a "new and
independent" basis upon which the sale was consummated. While
there are certain factual differences which make this case a closer call,
we are convinced that Schmidt's subsequent investigation here, and
particularly, his expressed reliance upon the title commitment, see
Garrett, 860 S.W.2d at 77, is sufficient as a matter of law to negate the
producing cause element of his DTPA claim against Bartlett. 

 Appellant's first and second issues are sustained. 

 Because we conclude that James Bartlett's representations were
neither the producing cause nor the cause-in-fact of Schmidt's decision
to purchase this property, we need not consider appellants' remaining
issues. Tex. R. App. P. 47.1. 


 The judgment of the trial court is REVERSED and judgment
RENDERED that Schmidt take nothing.



 

 ROBERT J. SEERDEN, Chief Justice


Publish.

Tex. R. App. P. 47.3.


Opinion delivered and filed

this 31st day of August, 2000.

 

1. Schmidt is a German citizen.
2. Because all of the events in issue in this appeal occurred in
1994, the subsequent changes to the DTPA are not applicable here. 
See generally Tex. Bus. & Comm. Code Ann. § 17.42 (Vernon 1995);
Act of June 8, 1995, 74th Leg., R.S., ch. 414, § 20, 1995 Tex. Gen.
Laws 3004. 
3. Schmidt expressly stated that Bartlett's representations
directly influenced his decision to enter into the earnest money
contract, testifying that Bartlett's statement "makes me sign the
earnest money contract."
4. The record shows that the title commitment also provided
Schmidt with adequate information to discover that his property was
actually encumbered by the restriction. Schedule B of the title
commitment provides:

 In addition to the Exclusions and Conditions and
Stipulations, your Policy will not cover loss, costs,
attorney's fees, and expenses resulting from:

 * * * *

 13. The Covenants, terms, conditions, and
restrictions and reservations contained in
Warranty Deed dated June 18, 1958, from
INGLESIDE LAND COMPANY to W.D.
WELLER INVESTMENT COMPANY, . . . .
(recording data omitted).


That Warranty Deed covers all of Block 57. Investigation of the
recording data provided in the title commitment furthermore
discloses that Block 57 has been replatted and that the restriction
has run with the land, and now covers the entirety of Block 57. 
Arguably, this information placed Schmidt on constructive notice of
the restriction prior to his decision to purchase.